**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Samuel JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted April 15, 2008.
Filed July 18, 2008.

John P. Cotter, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, KLEIN, and POPOVICH, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal *nunc pro tunc* from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of robbery and burglary. Sentenced to two concurrent terms of five to ten years' incarceration to be followed by five years' probation, Appellant challenges the sufficiency of the evidence and the adequacy of the jury instruction. We affirm.

¶ 2 The trial court opinion aptly summarizes the relevant facts as follows:

On August 8, 2002 approximately 9:30 p.m., eighty-eight year old Esther Reeber[, who] resided in a first floor apartment at 3413 Cresson Street, Philadelphia [ ] for twenty eight years ... heard Appellant, who had been living for a few years in a second floor apartment, knock on her door and call her name [in seeming] distress. N.T. 4/23/03 at 17–10. [Ms. Reeber] recognized Appellant's voice and began opening her door. However, she observed that Appellant was wearing a black mask, black gloves, and dressed in dark clothing, and she attempted [to] close the door to block his entry. Id. at 19–20. Appellant pushed his way into [Ms. Reeber's] apartment and upon gaining entrance he pushed her onto a nearby couch. Id. [Ms. Reeber] began to scream, [and] Appellant demanded that she stop and he placed duc[t] tape over her mouth. Id. at 20, 27. Appellant demanded that [Ms. Reeber] tell him where she kept her money whereupon [Ms. Reeber] showed Appellant her handbag, which Appellant grabbed before he fled.

Ms. Reeber testified that she has macular degeneration, a medical condition which affects her ability to read and write although she retains the ability to see large objects, e.g., people, etc. Id. at 18. [Ms. Reeber] stated that she is considered legally blind and that she must use a cane when walking. Id. [Ms. Reeber] further testified that before the robbery she believed Appellant to be a nice and friendly person and that he previously offered to help her with shopping and other tasks. N.T. at 23. [Ms. Reeber] had been introduced to

Appellant's mother and the week prior to the robbery she prepared breakfast for him [Appellant] in her apartment. N.T. at 23–25.

On direct examination [Ms. Reeber] was asked: "Even though he had a black mask on, the person whose voice that you recognized, was it the same voice as the Sam [Appellant] that came to your house and had breakfast with you?", and she responded "Oh, yes, I knew right off. If it had been a strange voice he had never gotten in." N.T. at 27.

After the robbery [Ms. Reeber] contacted police and reported the incident. N.T. at 29–31. [Officer Robbi Huff responded and took Ms. Reeber's statement in which she identified Appellant as her assailant]. N.T. at 30–31. Detective Lawrence Green arrived [at Ms. Reeber's apartment] the following day to interview her and testified that she complained to him of not being able to sleep or eat and that she requested to be transported to the hospital so that she could receive treatment and obtain medication. N.T. at 4/24/06 at 8. Green arranged for [Ms. Reeber] to be transported to Roxborough Memorial Hospital where she was treated and hospitalized for a week. N.T. 4/23/06 at 29–31. [While Ms. Reeber was admitted at the hospital,] Green interviewed [her] at which time [she] identified the perpetrator by name and stated that she was certain of his identity. N.T. 4/24/06 at 9. [Police sought Appellant by staking out his apartment for nearly two months, but Appellant had apparently abandoned the apartment, which still contained all its furniture. N.T. at 68–79; N.T. 4/24/03 at 7–15. Finally, based on a neighbor's tip, police apprehended Appellant on October 10, 2002, as he and two other men were moving his furniture out of the apartment. N.T. 4/24/06 at 9. After his arrest, Appellant] was interviewed by Detective Sekou Kinebrew. Id. at 71. Kinebrew described Appellant as having a "distinctively gravely voice" reminding the detective of the rapper Tone [Loc], "a raspy gravely type of voice." Id. at 71. [He was charged with Robbery, Burglary, and related charges, found guilty, and sentenced as noted *supra*. After having his direct appeal rights reinstated *nunc pro tunc*, this timely appeal followed.] Trial Court Opinion dated 7/12/07 at 2–4.

¶ 3 Appellant raises two issues for our review:

I. WAS THE EVIDENCE INSUFFICIENT TO FIND THE DEFENDANT [GUILTY] OF BURGLARY AND ROBBERY?

II. DID THE TRIAL COURT ERR IN NOT GIVING A CHARGE TO THE JURY THAT THE DEFENDANT WAS NOT IDENTIFIED AS THE PERPETRATOR BY THE COMPLAINING WITNESS?

Brief for Appellant at 2.

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Heberling*, 451 Pa.Super. 119, 678 A.2d 794, 795 (1996) (citing *Commonwealth v. Williams*, 539 Pa. 61, 650 A.2d 420 (1994)). In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder un-

less the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Commonwealth v. Cassidy,* 447 Pa.Super. 192, 668 A.2d 1143, 1144 (1995) (citations omitted). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548, 549 (1992) (citations and quotation marks omitted).

*Commonwealth v. Vetrini,* 734 A.2d 404, 406–407 (Pa.Super.1999).

¶ 4 Here, Appellant challenges only the sufficiency of the identification evidence against him. Specifically, he argues that Ms. Reeber's legal blindness made her physically incapable of identifying her assailant beyond a reasonable doubt. Her voice identification, Appellant contends, standing alone was inadequate as she never offered a detailed description of the voice, but instead simply stated that she knew it to be Appellant's based on their two years' acquaintanceship. Appellant also argues that other evidence further undermined Ms. Reeber's identification, such as her claim to police that she heard Appellant's voice outside her door on one night after the assault when Appellant was in jail, and where she told authorities she believed Appellant to be white when he is, in fact, African–American.

¶ 5 It is settled law that "[a] witness may testify to a person's identity from his voice alone." *Commonwealth v.*

*Fromal,* 392 Pa.Super. 100, 572 A.2d 711, 716 (1990) (citing *Commonwealth v. Woodbury,* 329 Pa.Super. 34, 477 A.2d 890, 893 (1984) (citation omitted)). Moreover, evidence of identification need not be positive and certain to sustain a conviction. *Woodbury,* 329 Pa.Super. at 40, 477 A.2d at 893 (quoting *Commonwealth v. Hickman,* 453 Pa. 427, 309 A.2d 564 (1973)). Additionally, the weight to be accorded voice identification testimony is a question for the trier of fact. *Fromal, supra.* In *Woodbury,* this Court, presented with a sufficiency of the evidence challenge to a murder conviction, found that a voice identification alone by a witness, who was familiar with the appellant's voice and had a "long existing acquaintanceship" with him, was sufficient to identify the appellant as the person who committed the murder. *Woodbury,* 477 A.2d at 893.

¶ 6 Here, like the witness in *Woodbury,* Ms. Reeber was familiar with Appellant's voice by virtue of their visits with one another in the apartment. She testified that she was certain that the voice of her assailant was that of Appellant; she would not have opened her door had she not identified the voice of the man who was calling her name and asking for help otherwise. Furthermore, additional evidence supported Ms. Reeber's identification, such as Appellant's unexplained disappearance from the apartment house for two months, his attempt to move his belongings out on the first day he returned, and the investigating officers' description of his voice as distinctively gravelly. That Ms. Reeber believed she heard Appellant's voice outside her door after Appellant's arrest, and believed he was white instead of African American were matters of weight to be decided by the jury, which may very reasonably have concluded that Ms. Reeber imagined she heard his voice because she was living in fear after being attacked in

her home, and that her mistake about his race was altogether irrelevant to her voice identification. We conclude, therefore, when viewed in the requisite light and drawing all reasonable inferences therefrom, the identification evidence was sufficient beyond a reasonable doubt.

¶ 7 Appellant's remaining issue stems from his position that Ms. Reeber never made a positive identification of her assailant. This being so, Appellant argues, the trial court was required to give a jury instruction informing the jury of the precise reasons why Ms. Reeber's identification was suspect, as he says is required by *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954) We disagree.

¶ 8 First, we note our standard of review when examining a challenge to jury instructions:

> When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Einhorn*, 911 A.2d 960 (Pa.Super.2006) (citations and quotation marks omitted).

¶ 9 "A *Kloiber* charge instructs the jury that an eyewitness' identification should be viewed with caution where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." *Commonwealth v. Upshur*, 764 A.2d 69, 77 (Pa.Super.2000), *appeal dismissed as improvi-*

*dently granted*, 566 Pa. 589, 782 A.2d 538 (2001) (internal quotation marks omitted). "However, identification testimony need not be received with caution where it is positive, unshaken, and not weakened by a prior failure to identify." *Id.*

¶ 10 Despite its belief that Ms. Reeber gave a positive identification at trial, the trial court still issued a qualifying instruction because of Ms. Reeber's poor eyesight:

> There is a question of whether the identification testimony of the complainant, Ms. Reeber, is accurate. A victim or other witness can sometimes make a mistake when trying to identify the criminal. If certain factors are present, the accuracy of identification testimony is so doubtful that a jury must receive it with caution. Identification testimony must be received with caution if the witness because of bad position or poor lighting or other reasons did not have a good opportunity to observe the criminal. If you believe that one or more of these factors are present, then you must consider with caution the identification testimony identifying the defendant as the person who committed the crime. If, however, you do not believe that at least one of these factors is present, you need not receive the testimony with caution. You may treat it like ordinary testimony as a statement of fact. You should consider all evidence relative to the question of who committed the crime including the testimony of the complainant, Ms. Reeber, and any evidence of facts and circumstances from which identity or non-identity of the criminal may be inferred. You cannot find the defendant guilty unless you are satisfied beyond a reasonable doubt by all of the evidence, direct and circumstantial, not only that a crime was committed, but

that it was the defendant who committed it.

N.T. at 4/25/03 at 19–20.

¶ 11 Appellant argues that the *Kloiber* instruction given above was inadequate because it failed to specify what factors—namely, her legal blindness—may require the jury to regard Ms. Reeber's identification with caution. Under the facts of the case, the jury could not have been in any way unsure about why the *Kloiber* instruction was given; it obviously just made the determination that Ms. Reeber's voice identification was not suspect, despite her vision problems. We therefore deem the instruction completely appropriate in light of the evidence and legally sound.

¶ 12 Judgment of sentence affirmed.