J. S20006/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| GARY SMITH, | : | No. 86 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, October 17, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0013605-2011

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND WECHT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　　　**FILED JULY 21, 2015**

Appellant appeals his conviction for second degree murder, robbery, and related crimes.  Finding no error below, we affirm.

On October 14, 2011, appellant and a co-defendant killed a man at the victim's home in Clairton during a drug deal turned robbery.  Appellant was convicted by bench trial on July 17, 2013, and sentenced to an aggregate term of life imprisonment on October 17, 2013.

On appeal, appellant argues that the trial court erred in not permitting him to present expert testimony as to the limits on eyewitness identification and also erred in not finding that the conviction was against the weight of the evidence.

We find no error with the trial court's holding.  After a thorough review of the record, the briefs of the parties, the applicable law, and the

well-reasoned opinion of the trial court, it is our determination that there is no merit to the questions raised on appeal. Judge Beth A. Lazzara's comprehensive, 14-page opinion, filed on September 15, 2014, thoroughly discusses and properly disposes of the questions presented.[1] We will adopt it as our own and affirm on that basis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2015

---

[1] One of the limits on eyewitness testimony raised by appellant is the effect of the presence of a weapon and how a "weapons focus" impairs memory and identification. Significantly, we note, as does the Commonwealth, that the eyewitness had an opportunity to observe appellant before a weapon was produced. (*See* Commonwealth brief at 11.) This factor also presents a major distinction between the facts of this case and those of *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014), relied upon by appellant.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,

vs.                                                    CC No. 13605-2011

GARY SMITH,

Defendant.

FILED
2014 SEP 15 PM 4:21
DEPT. OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

OPINION

This is an appeal following a non-jury trial conducted before this court between July 16, 2013 and July 17, 2013. The Defendant was found guilty of Second Degree Murder (18 Pa.C.S.A. §2501), Robbery - Serious Bodily Injury (18 Pa.C.S.A. §3701(a)(1)(i), Possession of Firearm Prohibited (18 Pa.C.S.A. §6105), two (2) counts of Criminal Conspiracy (18 Pa.C.S.A. §903) and three (3) counts of Recklessly Endangering Another Person (18 Pa.C.S.A. §2705). The Defendant was sentenced on October 17, 2013 to a term of life imprisonment without parole on the Murder charge and a concurrent period of five (5) to ten (10) years on the Robbery charge. Post-sentence motions were filed on October 23, 2013, argued on December 12, 2013 and denied on that same day. The Defendant's timely appeal followed.

**APPENDIX A**

The Defendant, in his Statement of Matters Complained of on Appeal, asserts only two (2) errors during the handling of this case, namely that (1) the court erred in refusing to allow expert testimony regarding eyewitness identification and (2) the guilty verdicts were against the weight of the evidence.

*FACTS:*

Co-Defendant Eugene McMiller and this Defendant, Gary Smith, were accused of killing Justin Charles during a robbery on October 14, 2011. On that day, Michael Elko and Charles Coddington were at Mr. Elko's home at 3103 Miles Street in Clairton. (T.R. 7/16/13, pp. 17, 21). Both Mr. Elko and Mr. Coddington were admitted heroin users. (T.R.7/16/13, pp. 16,18). A friend of the pair, Justin Charles, came to the home with two (2) African-American males, one of whom Mr. Elko later identified as the Defendant. (T.R.7/16/13, pp. 19, 21-22). Mr. Charles, also a heroin user, was trying to arrange a drug deal with the two (2) men. (T.R. 7/16/13, pp. 19-21, 22-24). Mr. Charles asked to buy two (2) stamp bags of heroin from the men in order to sample what the men were selling and then offered that he would buy a bundle of stamp bags if he liked the first two (2). (T.R.7/16/13, pp. 23-24). The men indicated that they did not have the drugs with them and would have to leave the house to go get the heroin. (T.R. 7/16/13, p. 24). The men then left the house. (T.R.7/16/13, p. 24). Mr. Charles asked Mr. Elko if he would get some heroin for him in the meantime, and Mr. Elko left the house to do so. (T.R. 7/16/13, pp. 24-25).

As Mr. Elko was walking in front of his house, he saw the co-Defendant enter the front door of his home, and the Defendant entering the back door. (T.R. 7/16/13, p. 25). Mr. Elko immediately returned to his home, entering the house shortly after the co-Defendant. (T.R. 7/16/13, pp. 25-26). As he entered his home, Mr. Elko heard the Defendant, who was in the kitchen, tell someone to lock the front door because there were police in the area. (T.R. 7/16/13, pp. 25-26). According to Mr. Elko, the co-Defendant then pulled out a gun and demanded money from Justin Charles. (T.R. 7/16/13, pp. 26-27, 29). Mr. Elko tried to give the co-Defendant the $20 that Mr. Charles had given him to buy two (2) stamp bags, but the co-Defendant did not even acknowledge the offer. (T.R. 7/16/13, pp. 26-27).

The co-Defendant threatened that, if Mr. Charles did not give him the money, he would give the gun to the Defendant, who would use it. (T.R. 7/16/13, pp. 29-30). The co-Defendant gave the gun to this Defendant, and another demand for money was made. (T.R. 7/16/13, p. 31). In response, Mr. Charles indicated that the money was upstairs. (T.R. 7/16/13, p. 31). Mr. Elko stated that there was no money upstairs because Mr. Charles did not live in the home, and then the three (3) men walked up the stairs. (T.R. 7/16/13, pp. 31-32).

When the three (3) men began walking upstairs, Mr. Elko called 911, and, during his report to the 911 operator, he heard shots coming from upstairs. (T.R. 7/16/13, pp. 32, 35). Mr. Charles ran down the stairs, followed by the Defendant with the gun and

3

then the co-Defendant. (T.R. 7/16/13, pp. 32-33). As the three (3) ran toward the back door, there was another gunshot. (T.R. 7/16/13, pp. 32-33). After the shooting, Mr. Elko saw the two (2) African-American men jump over Mr. Charles and then run together behind some nearby buildings. (T.R. 7/16/13, pp. 32, 39). Mr. Elko was in the back of the house with Mr. Charles when the paramedics arrived. (T.R. 7/16/13, pp. 34-35). Unfortunately, Mr. Charles was already dead by the time that the paramedics reached him. (T.R. 7/16/13, p. 35).

Mr. Elko described one of the men who entered his home that day to the 911 operator. He indicated that one of the men was a larger black man with a Muslim-style beard, meaning a beard that went from ear to ear, but with no mustache. (T.R. 7/16/13, p. 35). Mr. Elko met with a detective from the Allegheny County Police, Homicide Unit, later that day and was presented with photographs of individuals who could have been in his home that day. (T.R. 7/16/13, pp. 35-36). Mr. Elko identified the Defendant as one of the men who came into his house, and as the man who was originally in the kitchen, when shown a photo array by Detective Hitchings of the Allegheny County police. (T.R. 7/16/13, pp. 36, 38; Exhibit 4). Mr. Elko identified the Defendant in court as the man whose photo he selected in the photo array and as the man who was in his kitchen that day. (T.R. 7/16/13, pp. 38-39).

4

The cases of the co-Defendant, Eugene McMiller (2011-13606) and this Defendant, Gary Smith, were originally joined. Counsel for the co-Defendant filed a Motion for Severance pursuant to Rule of Criminal Procedure 583, stating that the co-Defendant's version of events was so antagonistic to the Defendant Mr. Smith's defense that it would be impossible for a trier-of-fact to believe both. Specifically, the co-Defendant acknowledged in his Motion being present at Mr. Elko's residence, with the Defendant, at the time of the shooting. (*See* Motion for Severance). The court granted the severance motion on February 16, 2012. While the cases were still joined, counsel for the Defendant filed a motion seeking to preclude the identification testimony of Mr. Charles Coddington, also an eyewitness to the events of October 14, 2011. This court granted the motion as to the Defendant on March 13, 2012. As such, the only person to present eyewitness testimony in this case was Mr. Elko.

*ARGUMENT:*

1. Motion to Allow Expert Testimony regarding Eyewitness Identification

Prior to the trial of this case, the defense filed a Motion to Allow Expert Testimony regarding Eyewitness Identification. Argument on the motion was scheduled for December 12, 2012. At that time, the Defendant's attorney asked to be permitted to brief the issue, a request to which the Commonwealth did not object. (T.R. 12/12/12, pp. 2-3). Briefs were filed on behalf of both the defense and the Commonwealth, but the defense requested that a ruling not be made quickly so that the Pennsylvania Supreme Court would have time to rule on this precise issue. The case of Com. v. Walker, 92

5

A.3d 766 (Pa. 2014), was being considered by the Supreme Court as the same issue was pending before this court in this case. When the Defendant's case was ready for trial, no decision had yet been rendered by the Supreme Court in the Walker case. Therefore, this court denied the Defendant's motion in accordance with the existing case law at the time of trial. (T.R. 7/16/13, pp. 12-13). It should also be noted that the Defendant had decided to proceed with a non-jury trial, making the issue of the expert less pressing in this court's mind, given that judges are generally more aware than juries of the vagaries of expert testimony. (T.R. 7/16/13, pp. 12-13).

While the defense asserts that this court erred in not permitting him to present expert testimony on eyewitness identification at the time of this non-jury trial, this court was relying on Pennsylvania Supreme Court decisions which have unequivocally barred the presentation of such testimony. Com. v. Spence, 627 A.2d 1176 (Pa. 1993); Com. v. Simmons, 662 A.2d 621 (Pa. 1995); Com. v. Abdul-Salaam, 678 A.2d 342 (Pa. 1996). Additionally, the Superior Court had also ruled in the same way, barring expert witness testimony regarding eyewitness identification. Com. v. Bormack, 827 A.2d 503 (Pa. Super. 2003). This court had no authority to ignore the mandates of higher courts in barring expert testimony regarding eyewitness testimony. While it is true that the Supreme Court has now revised this long-standing bar on such expert testimony in Walker, supra, that case was not decided until May 28, 2014, some ten (10) months following the trial and verdict in this case. This court correctly applied the law of the Commonwealth on this issue that was in effect at the time of the Defendant's trial.

6

This court did not commit error by applying existing law that barred the use of expert testimony with regards to eyewitness identification, and no new trial should be permitted on this basis.

2. The Verdict was Against the Weight of the Evidence.

The Defendant's entire argument that the verdict was against the weight of the evidence is premised on the allegation that Mr. Elko's identification of the Defendant was suspect and in error. The Defendant argues that Mr. Elko had insufficient time to view the Defendant in order to properly identify him, and that Mr. Elko was focused on the gun during the time that he was in the presence of the perpetrators instead of focusing on the person or persons holding the gun. The Defendant further argues that Mr. Elko was a heroin user who used that day, thereby affecting his ability to identify the perpetrators. He also asserts that Mr. Elko was unable to identify physical characteristics or articles of clothing of the perpetrators and that there was no physical evidence of the Defendant's presence at the scene. (See Statement of Matters Complained of on Appeal ¶8(b)).

The standard of review regarding claims of insufficiency of the evidence is well-settled. In reviewing the sufficiency of the evidence, the appellate court must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, is

sufficient to prove every element of the offense beyond a reasonable doubt. Com. v. Jones, 954 A.2d 1194 (Pa. Super. 2008).

An appellate court may not re-weigh the evidence and substitute its judgment for that of the fact-finder. Id. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. When evidence conflicts, it is the sole province of the fact finder to determine credibility and to decide whether to believe all, part or none of the evidence. Com. v. Lyons, 833 A.2d 245, 258 (Pa. Super. 2003). An appellate court cannot substitute its judgment for that of the finder of fact and may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Com. v. Hunzer, 868 A.2d 498, 506 (Pa. Super. 2005). Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Com. v. Perez, 931 A.2d 703 (Pa. Super. 2007).

Here, this court found the Defendant guilty of all charges after hearing strong direct evidence of the Defendant's involvement in this armed robbery and murder, namely, the testimony of an eyewitness to the robbery, Mr. Elko. Although the Defendant attempts to argue that the direct evidence provided by Mr. Elko was weak or incredible, this court found the testimony of Mr. Michael Elko to be compelling. He was one of two (2) eyewitnesses to the events of October 14, 2011, and he was able to describe what he saw, heard and experienced to the jury in great detail. (T.R.7/16/13,

8

pp. 21-35). Even though defense counsel engaged in a lengthy cross-examination of Mr. Elko (T.R. 7/16/13, pp. 40-60) in an attempt to discredit him and sully his credibility, this court chose to believe his version of what happened that day, which is well-within its province. Lyons, *supra*. As this court stated earlier, Mr. Elko was a compelling witness. It certainly does not shock this court's conscience or sense of justice that he was determined to be credible. His testimony, alone, when believed, is sufficient evidence to uphold this verdict.

This court will analyze the sufficiency of the evidence on the Robbery charge since that is the predicate offense upon which the felony murder rule applied. In order to be found guilty of Robbery – Serious Bodily Injury under 18 Pa.C.S.A. §3701(a)(1)(i), the Commonwealth was required to prove that the Defendant, during the course of a theft, inflicted serious bodily injury upon another. 18 Pa.C.S.A. §3701(a)(i). When believed, Mr. Elko's testimony proves, beyond a reasonable doubt, all of the necessary elements to convict the Defendant of Robbery.

Mr. Elko testified that it was the Defendant who entered his home on October 14, 2011 with Mr. Justin Charles (T.R. 7/16/13, p. 22), returned to the home a short time later and entered through the back door (T.R. 7/16/13, pp. 25, 50), and was in the kitchen during the initial demands for money and a "scuffle". (T.R. 7/16/13, pp. 26, 27, 29-30, 31, 38, 42). He further testified that it was the Defendant who had possession of the gun when the Defendant, the co-Defendant and Mr. Charles went upstairs, when the

three (3) men came back downstairs after a shot had been fired, and in the seconds before a second shot was fired. (T.R. 7/16/13, pp. 31-33, 39). These shots ultimately caused the death of Mr. Justin Charles (T.R. 7/16/13, pp. 34-35, 111-114), thereby satisfying the element of infliction of serious bodily injury. Mr. Elko testified that these events occurred during the course of a theft (T.R. 7/16/13, pp. 29, 31, 53) and while the Defendants were fleeing after attempting to commit a theft. (T.R. 7/16/13, pp. 32, 39). Mr. Elko's testimony alone, when believed, is sufficient to convict the Defendant of Robbery, the predicate offense to the Second Degree Murder charge, as well as all other crimes charged.

The Defendant states that Mr. Elko's identification of the Defendant should not be believed or found to be credible because (1) the Defendant had insufficient time to see the Defendant in order to properly identify him, (2) Mr. Elko was focused on the gun during the time that he was in the presence of the perpetrators instead of focusing on the person or persons holding the gun, (3) Mr. Elko was a heroin user who used that day, thereby affecting his ability to identify the perpetrators, (4) Mr. Elko was unable to identify physical characteristics or articles of clothing of the perpetrators, and (5) there was no physical evidence of the Defendant's presence at the scene. (*See* Statement of Matters Complained of on Appeal ¶8(b)). This court would first note that all of these points were ably argued by defense counsel throughout the trial, including through the examination of witnesses and during closing arguments. (T.R. 7/16/13, pp. 40-60, 131-137). This court was well aware of the defense's perspective with regard to Mr. Elko's credibility, or lack thereof. Despite these arguments, this court determined that Mr. Elko

10

was a credible witness and found, beyond a reasonable doubt, that it was the Defendant who was present in Mr. Elko's home on October 14, 2011, who participated in the robbery of Mr. Justin Charles, and who ultimately shot Mr. Charles, causing his death. (T.R. 7/16/13, pp. 146-147). The Superior Court should not substitute its judgment for the credibility determinations and findings of fact made by this court. Jones, *supra*; Lyons, *supra*.

This court found Mr. Elko to be credible for a number of reasons. Perhaps the most important was his certainty as to the identities of the men who entered his home that day. Mr. Elko never wavered in his identification of the Defendant from his initial identification when presented with a photo array by Detective Hitchings (T.R. 7/16/13, pp. 38-39, 87-88; Exhibit 4) to his trial testimony where he was subjected to an intense cross-examination about the alleged deficiencies in his credibility and perception cited in the paragraph above. (T.R. 7/16/13, pp. 40-60). Despite the aggressive cross-examination about the length of time that Mr. Elko saw the Defendant and his inability to remember what the Defendant was wearing at the time of the murder, Mr. Elko made clear that he remembered the Defendant's face and was able to identify him as one of the perpetrators of the crimes that occurred on October 14, 2011. (T.R. 7/16/13, pp. 22, 30, 36, 38-39, 42, 43, 44, 45, 47-48, 50, 60, 87-88).

Additionally, there was evidence presented during the course of the trial that corroborated Mr. Elko's version of events. Mr. Elko testified that it was the co-Defendant, Eugene McMiller, who was standing by, and who had entered, his front door. (T.R. 7/16/13, pp. 25-26, 28). Co-Defendant McMiller's fingerprint of his left index finger was found on the interior glass of the front storm door of Mr. Elko's residence. (T.R. 7/16/13, pp. 116, 120). Mr. Elko testified that there was "tussling" in the kitchen between the Defendant and Mr. Charles. (T.R. 7/16/13, pp. 31, 52). Detective Costa, when investigating the crime scene, noted that the kitchen was the only room in the house where items were overturned and disturbed, indicating that there had been a struggle there. (T.R. 7/16/13, pp. 93-95, 103-104; Exhibits 31, 32). Mr. Elko testified that he was on the phone with 911 dispatch when he heard the first shot. (T.R. 7/16/13, p. 32). The recording of the 911 phone call confirms this. (Exhibit 2).

Mr. Elko further testified that he heard two (2) gunshots during this incident. (T.R. 7/16/13, pp. 32-33). The autopsy findings confirmed that Mr. Charles was shot twice. (T.R. 7/16/13, pp. 111-114). Mr. Elko testified that the gun used in the crime was a revolver. (T.R. 7/16/13, p. 35). Detective Costa also testified that it was his belief that the gun used in this shooting was a revolver since no shell casings were found at the scene. (T.R. 7/16/13, p. 103). Mr. Elko identified the co-Defendant present with the Defendant as Eugene McMiller. (T.R. 7/16/13, p. 37; Exhibit 3). Detectives testified that, when the Defendant was apprehended, he was with the co-Defendant, and the Defendant even acknowledged under questioning by Detective Costa that he was with Eugene McMiller at the time of the homicide, although he indicated that they were

12

smoking marijuana together on his mother's porch at the time. (T.R. 7/16/13, pp. 78-79, 106-107). Additionally, Mr. Elko recalled that the Defendant was wearing a black hoodie at the time of this crime. (T.R. 7/16/13, pp. 42-44). A black hoodie was recovered from the Defendant's mother's house, where he was apprehended. (T.R. 7/16/13, p. 81).

While Mr. Elko may not have been able to recall the exact time of the incident or the type of shoes that the Defendant was wearing at the time, his testimony was believable and supported by the physical evidence at the crime scene. While it is true that no forensic evidence linked the Defendants to this murder, that fact does not mean that the evidence presented at trial was insufficient to sustain the convictions here. It is often the case that forensic evidence is lacking at the scene of a crime. Circumstantial evidence is sufficient to prove the crimes charged here. Mr. Elko's testimony and the corroborative evidence identified above are sufficient to sustain this court's conviction of the Defendant.

*CONCLUSION:*

This court did not commit error in the handling of this case. It properly applied existing law to the case in denying the defense's request for expert testimony regarding eyewitness identification. Further, this court heard the evidence in the case, made credibility determinations and chose to accept the eyewitness testimony of Mr. Elko. This court's factual findings and credibility determinations were properly made, were

supported by other evidence in the case, and should not be re-examined on appeal. This court's verdict should be upheld, and the Defendant's conviction and sentence should be affirmed.

By the Court:

_____
Beth A. Lazzara, J.

_____
          9/15/14
Date

14