J-S10004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELIO KEITH TORRES | : | |
| | : | |
| Appellant | : | No. 1318 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 10, 2019
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0002225-2018

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:          **FILED: MARCH 30, 2020**

Elio Keith Torres appeals from the judgment of sentence entered in the Berks County Court of Common Pleas following a jury verdict finding him guilty of persons not to possess firearms, **see** 18 Pa.C.S.A. § 6105(a)(1). For this offense, the trial court sentenced Torres to five to ten years of incarceration. On appeal, Torres singularly challenges the trial court's decision to deny his request for specific jury instructions. After a thorough review of the record, we affirm.

In April 2018, an officer from the Reading Police Department responded to a report of shots having been discharged from a firearm. At the purported scene of the gunfire, that officer noticed blood leading into an adjacent residence. The officer then entered that residence and found a man's sneaker with a hole through the toe area, a large pool of blood, a 9mm firearm, a spent

shell casing, and a live round of ammunition. Subsequent DNA testing established the existence of Torres's DNA on the 9mm firearm.

While the first officer searched the residence, a different officer found Torres with a gunshot wound to his foot some four blocks away. Immediately thereafter, Torres received medical treatment at a hospital. While at that hospital, a third police officer photographed Torres's injury.

Torres, in explaining what happened, told him that something went awry, which resulted in Torres discharging a firearm. However, Torres, a few moments later, explained that someone else had shot him. After police reviewed a communication between Torres and his girlfriend, two 9mm clips were found underneath two porch boards close in proximity to where the police had found Torres.

Prior to trial, Torres requested several jury instructions dealing with the voluntariness of the statement he made at the hospital as well as one jury instruction addressing the Commonwealth's burden of establishing the commission of a crime, otherwise known as *corpus delicti*. Eventually, after hearing the entirety of the Commonwealth's case against Torres, the trial court granted Torres's request as to one of his proposed jury instructions, but denied the other six suggestions. Ultimately, the jury found Torres guilty.

After sentencing, Torres filed a timely *pro se* notice of appeal, and thereafter, the court appointed counsel to represent him in this appeal. The

appeal is now properly before us as both the trial court and Torres have complied with the dictates of Pa.R.A.P. 1925.

Torres raises one issue for our review:

1. Did the trial court err in denying Torres's request for six specific jury instructions addressing the voluntariness of his hospital statement as well as the Commonwealth's failure to demonstrate that a crime was committed?

*See* Appellant's Brief, at 4.

Torres's issue is a challenge to the instructions given to the jury.

When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Jones*, 954 A.2d 1194, 1198 (Pa. Super. 2008). Further, we have held that

in reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this [C]ourt to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

- 3 -

***Commonwealth v. Brown***, 911 A.2d 576, 582-83 (Pa. Super. 2006) (quotation marks omitted).

We have further clarified that "[i]nstructions regarding matters which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury." ***Commonwealth v. Patton***, 936 A.2d 1170, 1176 (Pa. Super. 2007). Additionally, "[t]he trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [a]ppellant was prejudiced by that refusal." ***Commonwealth v. Thomas***, 904 A.2d 964, 970 (Pa. Super. 2006).

In his brief, Torres bifurcates his arguments in support of his proposed jury instructions by first discussing the applicability of *corpus delicti*. Then, he discusses the voluntariness of the statement he made while at the hospital and the attendant instructions he believes should have followed.

Torres initially suggests that because the Commonwealth failed to establish the *corpus delicti*, or the fact that a crime has been committed, in this case, the trial court committed an error of law by not utilizing Pennsylvania Suggested Criminal Jury Instruction Section 3.02A in its jury instructions.

> It is beyond cavil that, in this Commonwealth, a confession is not evidence in the absence of proof of the *corpus delicti* .... [W]hen the Commonwealth has given sufficient evidence of the *corpus delicti* to entitle the case to go to the jury, it is competent to show a confession made by the prisoner connecting him with the crime.

- 4 -

***Commonwealth v. Taylor***, 831 A.2d 587, 590 (Pa. 2003) (quotation marks and citation omitted). "*Corpus delicti*" means, literally, "the body of a crime." ***Id***. (citation omitted).

> The *corpus delicti* rule requires the Commonwealth to present evidence that: (1) a loss has occurred; and (2) the loss occurred as a result of a criminal agency. Only then can the Commonwealth ... rely upon statements and declarations of the accused to prove that the accused was, in fact, the criminal agent responsible for the loss.

***Commonwealth v. Hernandez***, 39 A.3d 406, 410 (Pa. Super. 2012).

The rule is intended to prevent the use of confessions occurring in the heat of the moment to convict a defendant where no crime has actually occurred. ***See Commonwealth v. Ahlborn***, 657 A.2d 518, 521 (Pa. Super. 1995). "The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion." ***Hernandez***, 39 A.3d at 410. (quotation marks and citations omitted).

"[O]nly inculpatory statements of an accused are subject to the protection of the *corpus delicti* rule." ***Commonwealth v. Verticelli***, 706 A.2d 820, 824 (Pa. 1998), *abrogated on other grounds*, ***Commonwealth v. Taylor***, 831 A.2d 587 (Pa. 2003). A statement is inculpatory if it "specifically connects [the defendant] ... to criminal activity." ***Id.***, at 824. Moreover, the *corpus deliciti* can be demonstrated through circumstantial evidence. ***See Commonwealth v. Reyes***, 681 A.2d 724, 727 (Pa. 1996).

Torres states that because "there was no witness to the actual gunshot other than [Torres] and because an inference of an accident at the hands of another is just as likely as [Torres] holding a gun when it was fired, the Commonwealth failed to establish through circumstantial evidence [the possession-based firearms offense.]" Appellant's Brief, at 12. He argues "the court should have instructed the jury to at least consider the relevant portions of the instructions that allowed for them, if they chose to do so, disregard [Torres's] statement [admitting to firing a weapon]." *Id*. When the court did not issue the requested instruction, "the jury simply made a determination that [Torres] actually uttered those words." *Id*.

We find that there was ample circumstantial evidence presented by the Commonwealth establishing the existence of a crime, which, as manifested in the court's action, therefore allowed for the admission of Torres's statement. "The application of the corpus delicti rule occurs in two distinct phases." *Ahlborn*, 657 A.2d at 521. The *corpus delicti* rule requires the court to determine whether, generally, the Commonwealth has established the commission of a crime by a preponderance of the evidence. *See id*. Upon satisfaction of this standard, a confession or admission would be admissible as evidence. *See id*.

After this initial admissibility inquiry, the Commonwealth must thereafter prove, beyond a reasonable doubt, the *corpus delicti* of the crimes charged. *See id*. Then, if a crime is proven by the Commonwealth beyond a

reasonable doubt, the jury may consider an inculpatory statement as evidence. **See Commonwealth v. Fried**, 555 A.2d 119, 121 (Pa. Super. 1989).

Here, Torres stated to a police officer that "shit went off and I shot my shit." N.T., 9/12/19, at 110. As an inculpatory statement given that Torres could not possess a firearm,[1] the *corpus delicti* rule would therefore apply. As such, the Commonwealth, in order to place Torres's admission into evidence, had to demonstrate by a preponderance of the evidence that a crime, in fact, occurred, e.g., a person prohibited from possessing a firearm in fact did so.

At trial, the Commonwealth utilized a theory of constructive possession to demonstrate the possession of a firearm. "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." **Commonwealth v. Walker**, 874 A.2d 667, 677-78 (Pa. Super. 2005). "Constructive possession may be established by the totality of the circumstances." **Id**., at 678.

The totality of the circumstances proffered by the Commonwealth included: 1) a finding of pooled blood, a shoe with a bullet hole in it, a bullet, and a spent shell casing; 2) the existence of Torres, a mere four blocks away from those four items, carrying a wound consistent with the aforementioned

---

[1] The Commonwealth presented unrebutted evidence that Torres was prohibited from possessing a firearm due to his prior conviction for robbery. **See** N.T., 6/19/19, at 94-95. On appeal, Torres does not raise any challenge concerning his status as a person not to possess a firearm.

shoe; 3) the discovery of Torres's DNA on the firearm; and 4) the retrieval of a gun clip after reviewing a communication between Torres and his girlfriend. Clearly, when considered together, the trial court did not abuse its discretion when it concluded that the Commonwealth had established that a crime had been committed by a preponderance of the evidence. This decision allowed for the admission of Torres's statement wherein he admitted to having fired a weapon.

Although the trial court employed the proper standard for admitting Torres's extra-judicial statement, there is no evidence that the jury was charged correctly based on the "dual level of proof application of the [*corpus delicti*] rule." **Ahlborn**, 657 A.2d at 302. "[T]he law of Pennsylvania continues to require that the Commonwealth prove the existence of the *corpus delicti* beyond a reasonable doubt before the jury may consider the defendant's confession. A jury instruction to that effect is, therefore, crucial[.]" **Id**.

However, even if the trial court erroneously charged the jury, if there is sufficient circumstantial evidence to convict an individual beyond a reasonable doubt absent the confession, that person would not be entitled to a new trial. **See Reyes**, 681 A.2d at 730. Accordingly, "we must determine whether viewing all of the evidence, in the light most favorable to the Commonwealth as verdict winner, supports the factfinder's finding." **Id**.

Wholly excluding Torres's statement, we are satisfied that there was overwhelming evidence to support the jury's conclusion that the

Commonwealth proved Torres's guilt beyond a reasonable doubt. Of most importance is the finding of Torres's DNA on the weapon he was charged with possessing. **See** N.T., 9/12/19, at 169-70 (identifying that a swab of the pistol revealed DNA that "matched the DNA profile obtained from Elio Torres"). From this piece of evidence, the jury was free to conclude that Torres possessed the firearm beyond a reasonable doubt. Therefore, Torres is not entitled to any relief on this issue.[2]

As to Torres's argument that the trial court should have included five specific instructions that controvert the voluntariness of his statement, this argument, too, misses the mark. Torres offers approximately four sentences in his brief to support his involuntariness assertion. **See** Appellant's Brief, at 13. In summation, Torres implies that the officer taking photographs of his injuries that were not life-threatening evinces conduct that could have been reasonably likely to bring out an admission.

---

[2] Although we have analyzed this issue in the context of the *corpus delicti* rule's applicability, it is unclear how this rule specifically applies to a case dealing exclusively with the crime of possessing a firearm while being a person not to possess a firearm. A firearm, by itself, cannot provide the basis for a finding that this specific crime has been committed. Obviously, as the name suggests, this crime requires a specific individual that is not allowed to possess a firearm to, in fact, possess that instrument. It would be hard, if not impossible, for the Commonwealth to demonstrate that a persons not to possess a firearm offense has been committed without necessarily implicating Torres. In any event, delving into this topic is not inherently important as we find there to be sufficient evidence for the jury to adjudicate guilt beyond a reasonable doubt.

Torres neither cites to the record nor identifies any authority in support of his argument. Arguably, Torres has waived this issue as the failure to support an argument with pertinent authority is a violation of our briefing rules which results in waiver of the unsupported issue. *See Commonwealth v. Spotz*, 18 A.3d 244, 281 n.21 (Pa. 2011) (without a "developed, reasoned, supported, or even intelligible argument[, t]he matter is waived for lack of development").

However, even if we were to not find waiver, his claim would still fall short; there is simply no indication that Torres's statement was not voluntary. First, the officer at the hospital was the only officer present with Torres, and he did not ride with Torres in the ambulance that traveled to the hospital. *See* N.T., 9/12/19, at 107. That officer acted because, in accordance with his police department's standard practice, if an officer believes there to be a "a victim involved, [a police officer] go[es] over to photograph the victim's injuries, injuries sustained during an incident[.]" *Id*.

The officer in this case "briefly told [Torres] what [his] duties were and the reason for [his] presence." *Id*., at 115. He also explained to Torres that he was there "to photograph his injury." *Id*. Torres, by his own volition, told the officer that "he wanted to tell [him] what happened." *Id*., at 108, 110. The officer did not ask for Torres to tell him what happened and did not "in any way … explicitly or implicitly tell [Torres] or demonstrate to [Torres] that he needed to tell [the officer Torres's] story." *Id*., at 110. However, after the

officer radioed to his supervisor with the information Torres provided, Torres's demeanor changed, becoming nervous and rigid. *See id*., at 111-12.

We conclude that the trial court did not abuse its discretion in denying several jury instructions related to the voluntariness of Torres's statement. Other than mere speculation, Torres has offered nothing to controvert the officer's testimony describing the situation at the hospital as being conversational instead of interrogatory. Furthermore, Torres does not suggest that the officer's behavior was equivalent to that of a custodial interrogation. *See Commonwealth v. Garvin*, 50 A.3d 694, 698 (Pa. Super. 2012) (identifying that if a defendant gives a statement without police interrogation, we consider that statement to be voluntary and not subject to suppression).

Based on the foregoing, Torres has failed to establish that it was in error for the trial court to reject his proposed jury instructions. If the trial court had read the jury instructions suggested by Torres, those instructions would not have been supported by the record and resultantly only would have confused the jury. As such, Torres is not entitled to relief, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/30/2020

- 11 -