J-S39040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LANCE SIMPSON :
:
Appellant : No. 2846 EDA 2019

Appeal from the Judgment of Sentence Entered September 4, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0004545-2017

BEFORE:  LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED AUGUST 28, 2020**

Lance Simpson (Simpson) appeals from the September 4, 2019

judgment of sentence imposed by the Court of Common Pleas of Delaware

County (trial court) following his convictions for Driving Under the Influence

(DUI) and Accidental Damage to Unattended Vehicle.[1]  Simpson challenges

the sufficiency of the evidence to support his conviction.  After careful review,

we affirm.

**I.**

The trial court summarized the facts of this case as follows:

On April 14, 2017, Officer Begany was on patrol in the Drexel Hill
section of Upper Darby Township, Delaware County, Pennsylvania.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(c), 3745(a).

He was dispatched to the intersection of Burmont Road and Woodland Avenue to address a traffic hazard caused by a stray tire in the road way. Once on scene, Officer Begany learned from a passerby a vehicle missing a wheel was operating in the vicinity. . . .

Sergeant Kenny was also on patrol the night of April 14, 2017 and he too was dispatched to 3614 Highland Avenue, Upper Darby to investigate a hit and run accident. After meeting with the homeowner at 3614 Highland, Sergeant Kenny followed what he described as gouge marks in the roadway. The gouge marks lead to the intersection of Woodland Avenue and Burmont Road. This is the same intersection where Officer Begany located the castoff tire.

Sergeant Kenny continued to follow the gouge marks from the intersection of Woodland Avenue and Burmont Road to 2228 Steele Road. 2228 Steele Road is the home of Defendant Simpson. At the time of his arrest, Defendant Simpson was a uniformed police officer with the Upper Darby Township Police Department, Delaware County, Pennsylvania. Sergeant Kenny observed Defendant Simpson's truck parked in the driveway of 2228 Steele with a missing tire. Sergeant Kenny confirmed there was a clear path of gouge marks from 3614 Highland Avenue to the intersection of Woodland Avenue and Burmont Road. The gouge marks persisted on Burmont Road, crossed Township Line Road, and continued on Dermond Road to Steele Road.

Officer William H. Sides is a twenty three (23) year veteran of the Upper Darby Township Police Department and was also patrolling the Drexel Hill section of the township on April 14, 2017. On that night, Officer Sides responded to a radio call and reported to the intersection of Burmont Road and Woodland Avenue. Officer Begany was the first to respond and he located a tire in the roadway by the time Officer Sides arrived. While on scene, Officer Sides received at least two reports of a gray pickup truck missing a tire but still traveling northbound on Burmont Road. Officer Sides observed gouge marks and fluids on Burmont Road; he followed these gouge marks on Burmont Road, to Dermond Avenue, across Township Line Road, to 2228 Steele Road.

Officer Sides was aware that 2228 Steele was the home of his co-worker, Defendant Simpson. When he approached 2228 Steele, Officer Sides observed Defendant Simpson's pickup truck in the

driveway with only three wheels and significant front end damage. Officer Sides radioed Captain Panagoplos[] and requested they meet at a nearby location. Officer Sides then met with Captain Panagoplos, advised Captain Panagoplos of what he discovered and turned the investigation over to Captain Panagoplos. . . .

Captain Panagoplos drove to 2228 Steele and was met by a gentlemen who suggested Captain Panagoplos "make sure Lance is okay." Captain Panagoplos approached 2228 Steele and observed the gray pickup truck in the driveway with heavy front end damage on the driver's side and a missing front tire.

At this point in the investigation, Captain Panagoplos was joined by Officer Sides. Only the first floor lights of 2228 Steele were lit and there were no other vehicles in the driveway. Captain Panagoplos knocked loudly on the door of 2228 Steele Road for several minutes and Defendant Simpson eventually appeared from the rear of the property. Captain Panagoplos noticed Defendant Simpson was staggering and unsteady on his feet. When Captain Panagoplos approached Defendant Simpson, Captain Panagoplos noticed an odor of alcohol on Defendant Simpson's breath. Captain Panagoplos also observed Defendant Simpson to be lethargic and slurring his speech. . . .[]

At this juncture, Captain Panagoplos placed Defendant Simpson under arrest as Captain Panagoplos determined Defendant Simpson was intoxicated to such a degree that he was incapable of safely operating a vehicle on the highways of the Commonwealth. This decision to arrest was based on Captain Panagoplos's observations of Defendant Simpson as well as[,] Defendant Simpson's singular presence near the truck, the proximity of the accident scene to 2228 Steele, the gouge marks evidencing the likely route of the three wheeled vehicle, the limited timeframe and the comments from Defendant Simpson's neighbor. . . .

On the morning of April 15, 2017, Captain Johnson was contacted by the Upper Darby Township Superintendent of Police and assigned the investigation focusing on his fellow officer, Defendant Simpson. Among other things, Captain Johnson secured all pertinent 911 calls from the evening of April 14, 2017, interviewed the 911 operators, the Upper Darby Police officers involved and witness Adam Stevenson. As the result of his investigation, Captain Johnson determined on the night of April 14, 2017,

Defendant Simpson was drinking alcohol while attending a retirement party held at a tavern in nearby Haverford Township, Delaware County, Pennsylvania. Captain Johnson calculated there was an approximate one (1) hour gap in time from when Defendant Simpson left the tavern and the first documented 911 call.

The Commonwealth also presented two (2) private citizen witnesses. Robert B. Elderton resides at 3614 Highland Avenue which is located in the Drexel Hill section of Upper Darby Township, Delaware County, Pennsylvania. On the night of April 14, 2017, Mr. Elderton parked his black Toyota Avalon along the curb on the street in front of his home. Close to midnight, Mr. Elderton heard a loud "bang" which roused him from his sleep. Mr. Elderton went to a window facing onto Highland Avenue and saw a gray pickup truck moving in the opposite direction of his parked car. The front driver's side wheel and/or rim assembly of the gray pickup truck was actually "grinding a little bit of smoke" but still capable of fleeing the scene. Mr. Elderton went outside, inspected the damage to his vehicle and called 911. Upper Darby Township police officers arrived on scene within ten (10) minutes. The damage to the Toyota Avalon totaled in excess of $5,000.00.

Finally, the Commonwealth presented to the testimony of Adam P. Stevenson. Mr. Stevenson resides at a corner property located at 1224 Dermond Road, Haverford Township, Delaware County, Pennsylvania. Mr. Stevenson and Defendant Simpson are neighbors as Dermond Road and Steele Road intersect. On April 14, 2017, as Mr. Stevenson was lying in bed just before midnight, he heard what he described as a "disabled vehicle . . . dragging something" outside the bedroom window. As the vehicle approached his house the noise grew louder, stopped and then migrated towards the side of his home.

Mr. Stevenson arose from his bed and peered out the bedroom window. He observed a pickup truck backing into the driveway of the Simpson residence. Mr. Stevenson recognized the pickup truck as the vehicle driven by Defendant Simpson. The vehicle was screeching as it backed into the driveway and was missing a tire. Mr. Stevenson eventually observed Defendant Simpson exit the vehicle.

Mr. Stevenson approached Defendant Simpson in Defendant Simpson's driveway and inquired if he was injured. Defendant

- 4 -

Simpson appeared intoxicated to Mr. Stevenson as Defendant Simpson was unsteady on his feet and there was a mild odor of alcohol present. Mr. Stevenson advised Defendant Simpson the pickup was likely a total loss. Mr. Stevenson offered to take Defendant Simpson back to the scene of the accident, but Defendant Simpson denied being involved in any automobile accident.

Mr. Stevenson then accompanied Defendant Simpson to the doorway of the Simpson home and Defendant Simpson entered. While Mr. Stevenson was returning to his home, a police cruiser advanced. The officer inquired who owned the damaged vehicle and Mr. Stevenson advised it belonged to Defendant Simpson. This first officer drove off. Mr. Stevenson began retrieving car parts that were strewn in front of his home. Sometime later that early morning, Mr. Stevenson was approached by a second uniformed officer, and following questioning similar to that posed by the first officer, he told the second officer the truck belonged to Defendant Simpson. A few days after the incident, Mr. Stevenson agreed to report to the Upper Darby Township Police Headquarters, speak with Captain Thomas A. Johnson, Jr., and provide a written statement.

Trial Court Opinion, 12/12/19, at 2-13 (citations omitted). Following a non-jury trial, the trial court convicted Simpson of the above-mentioned charges and sentenced him to 72 hours to 6 months' incarceration for the count of DUI and a consecutive 90 days' probation for the count of Accidental Damage to Unattended Vehicle. Simpson timely filed a notice of appeal and he and the trial court have complied with Pa.R.A.P. 1925.

**II.**

Simpson raises one issue on appeal: whether the evidence was sufficient to establish beyond a reasonable doubt that he was the driver of the

gray truck on the night in question.[2]  He contends that the Commonwealth did not present any direct evidence that he was the only individual in the gray truck during the accident or that he was the person who drove the truck into Mr. Elderton's vehicle and to his own home thereafter.  Thus, he argues that the evidence was insufficient to establish that he committed DUI and Accidental Damage to Unattended Vehicle.[3]

---

[2] The Commonwealth argues that Simpson's challenge goes to the weight of the evidence, not the sufficiency of the evidence, and that he has waived his weight claim by failing to raise it in the trial court at sentencing or through a post-sentence motion.  A challenge to the weight of the evidence must be addressed in the first instance by the trial court, and the trial court may grant a new trial if it determines that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000) (quotations omitted).  This court reviews the trial court's decision for an abuse of discretion. *Id.*  In contrast, a challenge to the sufficiency of the evidence is a question of law that we review *de novo*. *Id.* at 751.  "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged **and the commission thereof by the accused**, beyond a reasonable doubt." *Id.* (citation omitted, emphasis added).  A claim that the Commonwealth failed to establish the identity of the perpetrator of a crime is a challenge to the sufficiency of the evidence. *See*, *e.g.*, *Commonwealth v. Jones*, 954 A.2d 1194 (Pa. Super. 2008).  Thus, we decline to find waiver.

[3] Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of

To sustain a conviction for DUI, the Commonwealth must establish beyond a reasonable doubt that the accused drove or was in actual physical control of a motor vehicle while intoxicated; it is not sufficient to establish that the accused was merely sitting inside a vehicle while intoxicated. 75 Pa.C.S. § 3802(c); *see Commonwealth v. Brotherson*, 888 A.2d 901, 904-05 (Pa. Super. 2005) (holding that actual physical control of vehicle can be established by circumstantial evidence even when there are no eyewitnesses to the defendant's driving). Similarly, to sustain a conviction for Accidental Damage to Unattended Vehicle, the Commonwealth must establish that the "driver" of the vehicle involved in the accident failed to immediately stop and provide his or her name, address and insurance information to the driver or operator of the other vehicle. 75 Pa.C.S. § 3745(a). Here, the Commonwealth bore the

---

innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lopez*, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

burden of establishing that Simpson was intoxicated and driving the gray truck at the time it hit Mr. Elderton's vehicle.

While "[e]vidence of identification need not be positive and certain to sustain a conviction," there must nonetheless be sufficient evidence to establish beyond a reasonable doubt that the defendant was the perpetrator of the crime. *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*). In evaluating the sufficiency of the evidence to support an identification,

> the court should consider the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [his or her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The opportunity of the witness to view the actor at the time of the crime is the key factor in the totality of the circumstances analysis.

*Com. v. Valentine*, 101 A.3d 801, 806 (Pa. Super. 2014) (citation omitted). When evaluating the credibility of a witness's identification of the perpetrator, the fact-finder is entitled to believe all, part or none of the evidence presented. *Lopez*, *supra*. As with any other element of a crime, circumstantial evidence may be sufficient to establish the identity of a perpetrator. *Id.*

Here, the Commonwealth presented sufficient circumstantial evidence that Simpson was the driver of the gray truck even though none of the eyewitnesses observed Simpson driving while the truck was in motion. There is no dispute that Simpson was the registered owner of the vehicle. Through his investigation, Captain Johnson discovered that Simpson had been drinking

alcohol at a retirement party on the night in question, and that he left the party approximately one hour before the first 911 call reporting the accident. Elderton, the owner of the damaged Toyota Avalon, heard a loud bang at the time of the accident and went to his window in time to see Simpson's truck driving away from the scene of the accident. Elderton saw that the gray truck was damaged and emitting smoke but was still able to leave the scene of the accident. He left his house to inspect his vehicle and discovered that it had sustained a significant amount of damage from the gray truck.

Shortly thereafter, Stevenson heard a loud dragging sound outside of his house, which was located across the street from Simpson's home. He looked out of his window and saw the gray truck backing into Simpson's driveway, and he could see that the truck was missing a front tire. Stevenson recognized the gray truck as belonging to Simpson. While Stevenson could not see directly through the windshield to observe the driver of the truck, he did see Simpson struggling to exit the vehicle. He immediately went outside to speak with Simpson and he did not see anyone else in the truck or with Simpson. As Stevenson and Simpson were neighbors, Stevenson did not express any hesitation regarding his identification of Simpson and he testified that they had spoken to each other on prior occasions. **Valentine**, **supra.** Moreover, even though the events took place around midnight, Stevenson testified that a streetlight illuminated Simpson's driveway and that he could see Simpson trying to exit the truck from his bedroom window.

- 9 -

The Commonwealth also presented testimony from Officer Begany, who located the gray truck's missing tire laying in the middle of a road near the accident scene, and Sergeant Kenny, who observed fluid and gouge marks in the road leading from the accident scene to Simpson's home. Multiple individuals called 911 to report that a heavily damaged gray truck with a missing wheel was driving on the nearby streets. Officers were dispatched to investigate the scene of the accident minutes after it occurred and immediately began tracking the fluid gouge marks in the road.

Officer Sides and Captain Panagoplos were the first officers to approach Simpson's home, and they knocked on the door for several minutes without any response. Eventually, Simpson approached them from the back of the home and they placed him under arrest. Based on their observations of Simpson on the night in question and their prior experiences with him, Officer Sides and Captain Panagoplos believed that Simpson was intoxicated.[4] While at Simpson's home, officers spoke briefly with Stevenson but none of the officers testified to seeing any other person at the Simpson residence or near the gray truck. Under the totality of the circumstances, this evidence is sufficient to establish that Simpson was the driver of the gray truck when it collided with the Toyota Avalon, that he drove the gray truck, despite losing a tire, back to his home, and that he was intoxicated while doing so. Viewing

_____

[4] A blood test confirmed that Simpson's BAC was .239.

the evidence in the light most favorable to the Commonwealth, the evidence established beyond a reasonable doubt that Simpson committed the crimes of DUI and Accidental Damage to Unattended Vehicles.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/20