J-S34029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAWN A. STEWART | |
| Appellant | No. 1622 MDA 2015 |

Appeal from the Judgment of Sentence entered August 3, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0005521-2014

BEFORE:  PANELLA, STABILE, and JENKINS, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 25, 2016**

Appellant, Shawn A. Stewart, appeals from the judgment of sentence entered on August 3, 2015 in the Court of Common Pleas of Dauphin County following his convictions of, *inter alia*, robbery, burglary and criminal conspiracy.[1]  Appellant contends the evidence was insufficient to support his convictions, that his convictions were against the weight of the evidence, that a Commonwealth witness offered false testimony, that the prosecutor committed prejudicial misconduct in the Commonwealth's closing argument, and that his sentence was excessive.  Following careful review, we affirm.

In its November 20, 2015 opinion, the trial court provided a thorough factual summary of this case, the accuracy of which is confirmed by our

---

[1] 18 Pa.C.S.A. §§ 3701(a), 3502(a)(1) and 903(a), respectively.

review of the record. *See* Trial Court Opinion ("T.C.O."), 11/20/15, at 1-8. We adopt the trial court's summary as our own and incorporate it herein by reference as if fully set forth.

Briefly, in the two years leading up to early January 2014, Appellant and Sandra Matos ("Sandra") were engaged in a "friends with benefits" relationship. As of January 2014, Sandra lived in a Middletown, Pennsylvania townhome with her 13-year old twin sons. In the two months leading up to January 6, 2014, Sandra's father, Samuel Matos ("Matos"), lived with Sandra and her sons after moving to Middletown from Puerto Rico.

On the morning of Monday, January 6, 2014, Sandra was at work and her sons were at school when Matos heard a knock on the front door of the townhome. He opened the door to find two males and one female who asked for Sandra. When Matos explained she was not there, the three entered the home uninvited. One intruder put a gun to Matos' chest, ordered him to the floor, zip-tied his wrists behind him, and placed an item over his head. The other two intruders went upstairs and ransacked Sandra's bedroom and Matos' bedroom before leaving the home with a small blue suitcase belonging to Matos.

Matos was able to leave the home and summon assistance from a neighbor who called the police. The police, in turn, called Sandra who returned to the home. In the course of discussions with the police, Sandra explained that she had fabricated a story—playing to Appellant's perpetual

interest in money—telling Appellant she was traveling to Puerto Rico over the January 3-5 weekend to conduct business for her father and she was returning to Middletown with $87,000 in a locked bag.

Following a police investigation, Appellant was arrested and charged with burglary, robbery, conspiracy and other crimes. Following trial, a jury found Appellant guilty of all ten counts against him. On August 3, 2015, the trial court sentenced Appellant to consecutive terms of imprisonment totaling not less than 28 years nor more than 56 years in a state correctional institution, plus fines totaling $4,000.[2] Each of the sentences fell within the standard range for the crime committed. T.C.O., 11/20/15, at 8-9.

Appellant filed post-sentence motions, which the trial court denied. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following five issues for our consideration, the same five issues raised in his Rule 1925(b) statement of errors complained of on appeal:

---

[2] The aggregate sentence included 8-1/2 to 17 years plus a $1,000 fine for robbery; 7 to 14 years plus a $1,000 fine for burglary; 6 to 12 years plus a $500 fine for criminal conspiracy to commit robbery; 4 to 8 years plus a $500 fine for criminal conspiracy to commit burglary; 1-1/2 to 3 years plus a $500 fine for criminal conspiracy to commit unlawful restraint; and 1 to 2 years plus a $500 fine for recklessly endangering another person. The trial court did not impose any further sentence for criminal conspiracy to commit false imprisonment, simple assault, theft by unlawful taking, or criminal use of a communication facility. Costs of prosecution were also assessed for all ten counts. Sentencing Hearing, 8/3/15, at 14-16.

A. Whether Appellant's conviction for "home invasion" crimes, including robbery and burglary, must be overturned and judgment arrested because the evidence is insufficient to demonstrate beyond a reasonable doubt that he was one of the three perpetrators of the crimes, particularly because the victim repeatedly testified that the Appellant was not the male who pointed the gun at him and could not identify him as the other male, and the remaining circumstantial evidence was too weak to sustain the convictions otherwise?

B. Whether Appellant's convictions for "home invasion" crimes, including robbery and burglary, were against the weight of the evidence and must be vacated and a new trial granted because the evidence is insufficient for a reasonable jury to conclude beyond a reasonable doubt that he was one of the three perpetrators of the crimes, particularly because the victim repeatedly testified that the Appellant was not the male who pointed the gun at him and could not identify him as the other male, and the remaining circumstantial evidence was too weak to sustain the convictions otherwise?

C. Whether the arresting officer wrongly and prejudicially testified at trial that the Appellant was observed in one of the vehicles near the scene of the "home invasion" at the relevant time on surveillance video, which testimony was flatly false and contrary to the evidence because, in fact, there were no photos showing him in any of the vehicles?

D. Whether the prosecutor committed prejudicial misconduct by arguing in his closing speech to the jury that the Appellant "might" have been the male who held the gun to the victim's chest during the home invasion, which argument was contrary to the evidence the Commonwealth itself adduced at trial, to wit, the victim repeatedly testified that the Appellant was not the male who pointed the gun at him and could not identify him as the other male?

E. Whether Appellant's aggregate judgment of sentence of 28 to 56 years of incarceration is manifestly excessive and far too harsh a punishment because, although the individual sentences were in the standard range of the applicable guidelines, the sentencing court ran the sentences consecutively, thereby focusing solely on the severity of the

offenses to the exclusion of mitigating evidence and effectively circumventing the guidelines in the process?

Appellant's Brief at 8-9.

In his first issue, Appellant contends the evidence was insufficient to support his convictions. As this Court has explained:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Jones***, 954 A.2d 1194, 1196-97 (Pa. Super. 2008) (citations and brackets omitted).

The trial court determined Appellant's sufficiency challenge was limited to his convictions for robbery and burglary, as well as conspiracy to commit both of those crimes, based on his phrasing of the issue in his Rule 1925(b) statement. In his 1925(b) statement, as in his brief filed with this Court, Appellant states that his convictions for "home invasion crimes, including

robbery and burglary" must be overturned for insufficiency of evidence because the victim testified that Appellant was not the male who pointed the gun at him, he could not identify Appellant as the second male intruder, and the "remaining circumstantial evidence was too weak to sustain the convictions." Rule 1925(b) Statement at 1; Appellant's Brief at 8. We believe the trial court appropriately confined its review to the issues preserved in Appellant's 1925(b) statement, *i.e.*, whether the evidence was sufficient to support the home invasion crimes "including robbery and burglary."

The Commonwealth argues Appellant has waived the sufficiency issue entirely for failure to identify the elements of the crimes Appellant contends were not proven.[3] The Commonwealth relies on a recent decision by this Court in which we reiterated:

---

[3] Pursuant to 18 Pa.C.S.A. § 3701(a), "A person is guilty of robbery if, in the course of committing a theft, he . . . (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" Further, pursuant to 18 Pa.C.S.A. § 3502(a)(1), "A person commits the offense of burglary if, with the intent to commit a crime therein, the person: (1) enters a building or occupied structure[.]" Finally, "A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a).

> If an appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. Where a 1925(b) statement does not specify the allegedly unproven elements, the sufficiency issue is waived on appeal.

Commonwealth Brief at 18 (quoting **Commonwealth v. Tyack**, 128 A.3d 254, 260 (Pa. Super. 2015) (citations and brackets omitted)). We agree with the Commonwealth that Appellant's sufficiency issue does not specify, in the traditional sense, which element or elements of robbery and burglary were not established by sufficient evidence. However, we also recognize that Appellant *has* specified that the Commonwealth failed to establish perhaps the most basic "element" of the crimes of which he was convicted, *i.e.*, that he was "the person" who perpetrated the crimes. Therefore, we decline to find Appellant has waived his sufficiency challenge entirely.

We shall limit our sufficiency review to the crimes of robbery, burglary and conspiracy, as the trial court has done, and as Appellant has done in his brief. **See** Appellant's Brief at 28-38.

At the outset, we recognize, as this Court did in **Jones**, that the Commonwealth may sustain its burden of proving elements of a crime by circumstantial evidence and, importantly, that the jury passes upon the credibility of witnesses and the weight of the evidence produced. While Appellant suggests Sandra's testimony was incredible and should be completely discounted, that determination was for the jury, which heard Sandra testify and even admit to lying about things she told Appellant.

- 7 -

Appellant argues that Sandra's story was "crazy" and "bizarre" and that Sandra is a "major-league liar" who should not be believed. Appellant's Brief at 29, 31, 32. Despite Appellant's denunciation of Sandra and her testimony, our review establishes that parts of her testimony were supported by testimony of other Commonwealth witnesses. Records from Sprint revealed that from Friday, January 3, until Monday, January 6, 2014, Appellant's phone and Sandra's phone "communicated with each other 234 times." Notes of Testimony, 6/9/15, at 134. Further, an expert in the field of historical cellular record analysis testified he was able to track the location of Appellant's cell phone, showing its movement from New York City on the evening of Sunday, January 5, to Sandra's Middletown neighborhood on the morning of Monday, January 6, after the weekend during which Sandra pitched Appellant her fabricated story of being in possession of a significant amount of cash. *Id.* at 96-103.

Sandra's testimony revealed that in a conversation on the morning of January 6, Appellant asked Sandra if her sons were going to school. *Id.* at 50. She found the question odd because she and Appellant never discussed her family. *Id.* During Sandra's final conversation with Appellant before she started work at 8 a.m. on January 6, Appellant told Sandra he was "coming to get that money." *Id.* at 52. Appellant had been to Sandra's home approximately 30 times, and had been on the second floor where her bedroom was located. *Id.* at 66-68. Again, only her bedroom and the

bedroom in which Matos was staying were ransacked. *Id.* at 56-57. As one of the responding detectives observed, "It looked like whoever had done this had known where they were looking—where they were going to look and had found what they were looking for." *Id.* at 118.

Sandra testified that she called Appellant at approximately 10 a.m., as she was driving from work to her home after being contacted by the police about the home invasion. She explained that Appellant "was disrespectful. Angry. Yelling at Me. Cursing at me. . . . And he said to me, 'Where's the fucking bag? I can't find the bag.'" *Id.* at 54-55. Sprint records reveal that the final communication—either call or text—between the two phones took place at a time consistent with Sandra's testimony concerning that conversation. *Id.* at 134.

The Commonwealth also presented surveillance evidence from cameras in Sandra's neighborhood that showed three vehicles "casing" the area before the home invasion and then driving in tandem after the invasion. *Id.* at 131-32, 137-43. One of the three vehicles was an uncommon light silver-blue Mercury SUV. *Id.* at 137, 141. Based on Appellant's frequent communications from prison with Maritza Melendez, who was identified as Appellant's girlfriend, the police drove to her address and observed "the exact same vehicle in her driveway." *Id.* at 142.

Appellant relies heavily on the testimony of Matos, contending that he—as the victim of the crime—"repeatedly testified that Appellant was not

the male who pointed the gun at him" and could not identify him as the second male intruder. Appellant's Brief at 28. However, Matos' testimony was not as unequivocal as Appellant suggests. When asked if the man who held the gun to his chest was in the courtroom, Matos replied, "I believe no." *Id.* at 30. However, Matos also testified that he never saw the face of the other male. *Id.* at 20-21. When asked if he recalled testifying at the preliminary hearing that Appellant was not one of the people in his home, he answered, "Well, I didn't see him. Because one of those men, I didn't see their face." *Id.* at 34.

One of the responding detectives, Detective Appleby, testified about showing Matos a photo lineup, stating:

> [W]e had placed [Appellant's] photo in with seven other people who look similar in nature to him.
>
> And we've done these for years, and we do a lot of them. When I set the photo array down for [] Matos to look at, he immediately pointed to [Appellant] and said, "Not him. Definitely not him." I've never seen anybody do that in my entire career as a police officer. He just immediately said, "that is not him," and pointed at his picture—[Appellant's].

*Id.* at 127. Detective Appleby was asked about Matos' demeanor throughout the investigation and responded that Matos was "scared to death. I don't think this a situation he's ever been in before, but he and Sandra both seemed extremely scared of this situation. Sandra had stated to us, too, that she had feared retaliation." *Id.* at 129.

- 10 -

Based on the entire record,[4] we conclude the evidence was sufficient to support Appellant's convictions of robbery and burglary. To the extent Appellant preserved a challenge to his conspiracy convictions, we find the evidence was sufficient to support those convictions as well. As the trial court noted:

> [E]ven if the jury were unable to determine [Appellant's] precise role in the robbery and burglary, evidence supported his participation as a conspirator. The Commonwealth's burden to establish that a defendant was part of a joint effort may be established by wholly circumstantial evidence. Further, the general rule of law [] pertaining to the culpability of conspirators is that each member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in the furtherance of the conspiracy.

T.C.O., 11/20/15, at 12-13 (quotations and citations omitted).

Viewing all of the evidence, including circumstantial evidence, in the light most favorable to the Commonwealth, we find the evidence was sufficient to support Appellant's convictions. Appellant's first issue fails.

Appellant next contends that the verdict was against the weight of the evidence. Appellant preserved this issue by raising it in his post-sentence motion. Post-Sentence Motion, 8/13/15, at 2-3. **See** R.Crim.P. 607(A) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial . . . (3) in a post-sentence motion.")

---

[4] We note that Appellant did not present any testimony or evidence on his own behalf.

- 11 -

Our Supreme Court has instructed:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. ***Commonwealth v. Whiteman***, 336 Pa. Super. 120, 485 A.2d 459 (1984). Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Brown***, 538 Pa. 410, 648 A.2d 1177 (1994).

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (citation omitted). Further:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Id.*** at 753 (citations omitted). "It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (internal quotations and citations omitted).

The trial court concluded the evidence supported the jury's findings and "demonstrated that [Appellant] schemed to locate the supposed cash,

forced his way in to the residence, tied up and held [] Matos at gunpoint and removed a suitcase believed to contain the cash." T.C.O., 11/20/15, at 14. As reflected in our discussion of the evidence above, the Commonwealth introduced ample evidence, including circumstantial evidence, to support Appellant's convictions. The jury was free to weigh the evidence as it did and return a verdict of guilty. We cannot conclude that the trial court abused its discretion by rejecting Appellant's weight of evidence challenge. *Widmer*, 744 A.2d at 751-52. Appellant's second issue fails.

Appellant next argues that the arresting officer "wrongly and prejudicially testified at trial that the Appellant was observed in one of the vehicles near the scene of the 'home invasion.'" Appellant's Brief at 45. Appellant contends that the officer's testimony was false and misleading because there were no photographs showing Appellant in any of the vehicles.

The testimony in question involved an exchange between Appellant's trial counsel and the arresting officer as follows:

Q. And I asked you about the vehicles. You don't know who was in those vehicles. You never got a shot. You think [another suspect] may have been in one of them but –

A. [Appellant] was in one of them. I don't know about the other guys.

Q. I'm sorry?

A. Shawn Stewart was in one of them.

Q. Do you have a picture of it?

A. No.

Q. Well, the pictures that we saw here don't show anybody in those vehicles. Those windows are all blacked out; correct?

A. I don't know if they're all tinted.

Q. Well, when you testified you didn't show us who was in those vehicles, correct?

A. Correct. What I'm saying to you is those three vehicles—in my experience as a police officer and detective—were the ones that committed the crimes. We charged [Appellant]. I believe he was in those vehicles.

Q. You believe?

A. I believe, yeah.

Q. That's fair.

A. I believe that was how he got there and how he left.

Notes of Testimony, 6/9/15, at 155-56.

Appellant argues that the detective's testimony was "false, misleading testimony." Appellant's Brief at 45. We cannot agree. The detective testified to his *belief* based on his experience. In fact, he used the word "believe" three times in the course of the exchange. As the trial court determined, the detective's belief that Appellant was in one of the three vehicles "constituted a credibility determination within the province of the jury." T.C.O., 11/20/15, at 14. "The jury was free to accept or reject any and all facts and conclusions to which [the detective] testified [] in deciding whether [Appellant] occupied one of the vehicles in the vicinity at the time

surrounding the robbery." *Id.* at 16. We likewise reject Appellant's contention that the testimony constitutes a ***Brady***[5] violation because the Commonwealth failed at trial to correct the detective's testimony. The rule of ***Brady*** involves the discovery, *after trial*, of information known to the prosecution but unknown to the defense. ***See United States v. Agurs***, 427 U.S. 97, 103 (1976). Among other things, ***Brady*** holds "that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair." ***Id.*** Because, as stated, the detective testified as to his belief that Appellant was in one of the vehicles based upon his experience as a police officer and detective, the testimony could not be considered perjured and the jury was free to accept or reject the testimony.[6] Appellant's third issue fails for lack of merit.

In his fourth issue, Appellant claims prosecutorial misconduct for a statement made by the prosecutor in the Commonwealth's closing argument. In the course of discussing the various crimes at issue, the prosecutor stated, "So robbery. [Appellant] threatened serious bodily injury or put in fear of serious bodily injury [] Matos. Well, **he was an accomplice, or we don't know; he might have been the one holding**

---

[5] ***Brady v. Maryland***, 373 U.S. 83 (1963).

[6] In light of our disposition of this issue, we decline to entertain Appellant's suggestion that the "plain error" federal standard be adopted in Pennsylvania.

**the gun** right in [] Matos' chest. I mean, that's the threat of death."

Excerpted Transcript of Proceedings – Closing Arguments, 6/10/15, at 21-22 (emphasis added).

The trial court determined that Appellant's fourth issue was waived for lack of objection. T.C.O., 11/20/15, at 16. We agree. ***See, e.g., Commonwealth v. Andrulewicz***, 911 A.2d 162, 167-68 (Pa. Super. 2006) (failure to object to statements in prosecutor's closing argument results in waiver on appeal). However, even if not waived, we would dismiss Appellant's argument as meritless. As the Commonwealth notes, "Generally, comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." Commonwealth Brief at 31 (quoting ***Commonwealth v. Strong***, 563 A.2d 479, 483 (Pa. 1989) (internal quotations, citation and brackets omitted)). Further, when delivering closing arguments, "the prosecutor is permitted wide latitude in making argument to the jury." ***Commonwealth v. Chester***, 587 A.2d 1367, 1377 (Pa. 1991). Because the prosecutor's remarks were not likely to prejudice the jury or prevent them from weighing the evidence objectively, we decline to find that the remarks approach the level of prosecutorial conduct warranting relief.

In his fifth and final issue, Appellant argues that his sentence was manifestly excessive due to the fact the trial court imposed his sentences consecutively. Appellant also contends the trial court "focused exclusively on the severity of the offenses arising from the home invasion to the total exclusion of mitigating factors and his rehabilitative needs, thereby effectively circumventing the Sentencing Code's mandate that a sentence be 'individualized.'" Appellant's Brief at 54.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011). As this Court explained in *Allen*,

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.*

In this case, Appellant filed a timely notice of appeal and preserved the issue in a motion to modify his sentence. Appellant's Post-Sentence Motion, 8/13/15, at 2. Also, in his brief, Appellant included a Rule 2119(f) Statement of the Reasons to Allow an Appeal to Challenge the Discretionary Aspects of [his] Sentence. *See* Appellant's Brief at 21-27. Therefore, we

must determine whether Appellant has presented a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011). "An appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014), *appeal denied,* 105 A.3d 736 (Pa. 2014) (internal citations and quotations omitted).

A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010), *appeal denied*, 14 A.3d 825 (Pa. 2011). The imposition of consecutive rather than concurrent sentences will present a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Lamonda*, 52 A.3d 365, 372 (Pa. Super. 2012) (*en banc*), *appeal denied,* 75 A.3d 1281 (Pa. 2013).

Nevertheless, as this Court has explained:

> [A] defendant **may** raise a substantial question where he
> receives consecutive sentences within the guideline ranges

- 18 -

if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014) (emphasis in original). This Court has since held that an appellant's "challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*), *appeal denied*, 126 A.3d 1282 (Pa. 2015). We likewise find that Appellant's claim of excessiveness, paired with his claim the trial court failed to consider mitigating factors and rehabilitative needs, presents a substantial question. Therefore, we grant the petition for allowance of appeal and shall consider the merits of Appellant's claim.

Appellant asserts that the trial court "looked entirely at the crimes with which Appellant was convicted and the retributive aspect of the punishment, and no weight at all was given to his rehabilitative needs and potential for redemption." Appellant's Brief at 56-57. "Nor was the Appellant's judgment of sentence in keeping with the protection of the public, the gravity of the offenses and his rehabilitative needs." *Id.* at 57. We cannot agree.

As the trial court explained, "In properly exercising its discretion to impose consecutive sentences, the court considered numerous relevant

factors including the violent crimes upon an elderly man, [Appellant's] lack of amenability to rehabilitation and the danger he poses to the community." T.C.O., 11/20/15, at 16-17. The transcript from Appellant's sentencing hearing bears this out.

During the hearing, the Commonwealth provided a synopsis of Appellant's extensive criminal history, dating back to 1994, when Appellant was 17 years old. Sentencing Hearing, 8/3/15, at 4-6. Before imposing sentence, the trial court explained, "For the record, I have reviewed the presentence report. I have also reviewed letters from Reverend Assistant Pastor Anita Braxton of the McLamb Memorial Church of the Living God; Gloria Stewart, [Appellant's] mother; Maritza Melendez; Shaisa White. . . . And finally I have the letter from [Appellant]." Sentencing Hearing, 8/3/15, at 9. The court then summarized the evidence, which it characterized as "overwhelming." *Id.* at 9-11. The court next considered Appellant's record, stating:

> Let's take a look at his record. He has a prior record score of 5. [On] October 10, 1994, he was charged with aggravated assault, criminal conspiracy. It was reduced to recklessly endangering another person, three days to six months, immediate release. He would have been –
>
> Second, July 10, 1996, two years later, he's found guilty of endangering – recklessly endangering another person, six months to two years SCI; carrying a firearm without a license, six months to one year SCI consecutive; recklessly endangering another person, six months to one year SCI, consecutive one and a half to three years. That was in '96. In September of '96, he receives a one and a half to five year sentence for unlawful possession of drug paraphernalia and criminal conspiracy

possession with intent to deliver, and he receives one and a half to five years for that. In 2005, he's found guilty by a jury of criminal conspiracy, attempted burglary, and receiving stolen property and gets 18 to 60 months SCI, one and [a] half to five years. That's in 2005. In 2006, he's sentenced to five years in Federal prison for possession with intent to deliver a controlled substance, and he we are in 2014. So 2006, he would have gotten out[,] I would think, in 2011 or so, and within three years of that he is – or close to four years – convicted of robbery, burglary, criminal conspiracy to commit robbery and burglary, criminal conspiracy to commit unlawful restraint, false imprisonment, recklessly endangering another person, simple assault by physical menace, theft by unlawful taking, and criminal use of a communication facility.

Of course, we've reviewed the entire presentence report. We've taken into consideration the letters that were introduced. Quite frankly, with all due respect, because everybody is sincere in their beliefs, but I find it hard to believe that some of those people that wrote those letters know this young man because they're certainly contrary to his record and to the present case.

In sentencing a [d]efendant, the [c]ourt has to consider the offense committed, the danger to the community that he poses, the need for rehabilitation and the amount that is needed. Of course, I have to consider his past record, which is extremely violent, his past positive things that some of the letters spelled out but that are – that pale next to the horrific crime that was committed here, and it was very clear he believed that there was a great deal of money in the house. [Sandra] foolishly was testing him, and she's lucky it didn't end with the death of her father.

Based on all of the information presented, a complete review of this presentence report – And I note in particular what the police said in here. He has a propensity for violence and is concerned – this was Detective Appleby – about him being a free man.

Well, based on all that I've indicated here, the overwhelming evidence against him in the trial, and the fact to give any lesser sentence to this man would place all of society in danger, we sentence him as follows: . . . .

- 21 -

Sentencing Hearing, 8/3/15, at 11-14. The trial court then imposed the sentence set forth previously in this memorandum, totaling 28 to 56 years in a state correctional institution, plus fines and costs. *Id.* at 14-16.

The provisions of 42 Pa.C.S.A. § 9781 specifically allow the imposition of consecutive sentences and direct that the sentencing court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9781(a) and (b). Our review establishes that the trial court imposed consecutive sentences as authorized by § 9781(a) and followed the mandates of § 9781(b). In doing so, the trial court neither ignored nor misapplied the law. Further, we find that the trial court did not exercise its judgment for reasons of partiality, prejudice, bias or ill will and did not impose a manifestly unreasonable sentence. Therefore, we hold that the trial court did not abuse its discretion in imposing Appellant's aggregate sentence. Appellant is not entitled to relief on his fifth issue challenging the discretionary aspects of his sentence.

We find that each of Appellant's issues is either waived or fails for lack of merit. Therefore, we shall affirm his judgment of sentence. In the event of further proceedings, the parties shall attach a copy of the trial court's

November 20, 2015 opinion to their filings in light of our incorporation herein of the trial court's summary of the factual background of this case.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/25/2016