J-S27038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAWN DIXON, | |
| Appellant | No. 2094 EDA 2016 |

Appeal from the PCRA Order June 28, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0001047-2007

BEFORE: GANTMAN, P.J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED MAY 08, 2017**

Appellant, Shawn Dixon, appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. We affirm.

We take the following facts from the PCRA court's October 6, 2016 opinion and our independent review of the certified record.

> At trial, the Commonwealth presented the testimony of Mr. Tarangi Lewis. Mr. Lewis stated that on July 21, 2006, at approximately 7:30[]pm, he visited his cousin on the 2500 block of Kingston Street. Later, while at his cousin's house, Mr. Lewis stated that there was a commotion going on near his truck, which was parked near the corner of Frankford and Kingston. Mr. Lewis then walked towards his truck and as he was inspecting it for scratches he heard girls arguing back and forth near a car which had pulled up to the corner. It was then that

---

[*] Retired Senior Judge assigned to the Superior Court.

Mr. Lewis heard a girl say "that is what I brought you up here for, shoot, shoot." (N.T. Trial, 5/06/08 at 31). Mr. Lewis testified that he heard four to five gun shots and was shot in his leg. He also testified to seeing a young kid get shot and run into an alley. (*See id.* at 33-34). Mr. Lewis then drove himself to the hospital.

The testimony of Darnell Simmons was also presented by the Commonwealth. Mr. Simmons, while walking back from the Rec Center, arrived at Kingston Street and noticed girls who looked like they were about to begin fighting. (*See id.* at 83-84). He then stated that he saw a vehicle drive up and [Appellant] got out of that vehicle. (*See id.* at 85-87). It was at this time that he heard a girl say that [Appellant] had a gun. (*See id.*). Mr. Simmons stated that he heard [Appellant] say[,] "fuck that I'll shoot everyone on the corner." (*Id.* at 87). [Appellant] then fired [five] to [six] shots, shooting Mr. Simmons twice, once as he was trying to run away. (*See id.* at 87-88). Mr. Simmons ran into an alley and after trying to get help, he collapsed until police arrived. . . . Mr. Simmons was transported to Temple Trauma Center.

The Commonwealth also presented the testimony of Jasmine Merritt who testified that she was at a Chinese restaurant near Kingston Street when she and her friend Erica were involved in a fight. (*See* N.T. Trial, 05/07/08, at 13). After walking to Kingston Street, Ms. Merritt stated that her friend Erica called her stepfather to come down. (*See id.*). At the time, Ms. Merritt believed that the stepfather's name was Malik. (*See id.* at 33-34). Ms. Merritt testified that [Appellant] pulled up in a Grand Marquis and began shooting [three] to [five] times. (*See id.* at 1[5]-20). Ms. Merritt was interviewed by the police and advised them the name of the shooter was Malik. She was shown photographs but could not identify anyone. (*See id.* at 61-62). The police later received an anonymous phone call pointing them to [Appellant]. They then showed Ms. Merritt a picture of [Appellant] and asked if that was Malik, to which she affirmatively responded and said he was the shooter. (*See id.* at 70-71, 102-05). Mr. Simmons was shown a photo array after the police spoke to Ms. Merritt and he identified [Appellant]. (*See id.* at 105-[06]). Mr. Simmons was also shown a lineup and selected [Appellant]. (*See id.* at 127-32). . . .

(PCRA Court Opinion, 10/06/16, at 1-3) (some record citations omitted; record citation formatting provided).

Before the jury began deliberations, the trial court instructed it about, *inter alia*, the identification testimony offered by Ms. Merritt and Mr. Simmons.  Specifically, the court stated:

> . . . In her testimony Jasmine Merritt identified [Appellant] as the person who committed the crime.  In evaluating her testimony, in addition to all other instructions I have provided you for judging testimony of witnesses you should consider the additional following factors.
>
> Did the witness have a good opportunity to observe the perpetrator of the offense?
>
> Was there sufficient lighting for the witness to make her observation?
>
> Was the witness close enough to the individual to note his facial and other physical characteristics as well as any clothing he was wearing?
>
> Has the witness made any prior identification of [Appellant] as the perpetrator of these crimes at any other proceedings?
>
> Was the identification positive or was it qualified by hedging or inconsistencies?
>
> During the course of this case did the witness identify anyone else as the perpetrator?
>
> In considering whether or not to accept the testimony concerning the identification you should consider all the circumstances under which the identification was made.
>
> Furthermore, you should consider all the evidence relative to the question of committing a crime including the testimony of any witness for which identity or non-identity of a perpetrator of a [crime] may be inferred.

. . . In the testimony[,] Darnell Simmons has identified [Appellant] as the person who committed the crime. There is a question of whether this identification is accurate. A victim or other witnesses can sometimes make a mistake when trying to identify the criminal. If certain factors are present the accuracy of the identification testimony would be so doubtful that the jury must receive it with caution. Identification testimony must be received with caution if the witness because of bad position, poor lighting, or other reasons that [he] does not have a good opportunity to observe the criminal. If the witness' positive testimony as to the day is weakened by qualification or inconsistencies in the rest of his testimony or by his not identifying the defendant as a criminal before the trial. If you believe that one or more of these factors are present then you must consider with caution the testimony of Darnell Simmons, identifying [Appellant] as a person who committed the crime. If however, you do not believe at least one of these factors is present[,] then you need not receive the testimony with caution. You may treat it like any other testimony. You should consider all the evidence relative to the question who committed the crime and the testimony of Darnell Simmons along with other evidence and facts and circumstances from which identity or non-identity of the criminal may be inferred.

You cannot find [Appellant] guilty unless you are satisfied beyond a reasonable doubt by all the evidence direct or circumstantial not only that the crime was committed but that it was [Appellant] who committed the crime.

(N.T. Trial, 5/09/08, at 53-56).

On May 9, 2008, the jury convicted Appellant of two counts of aggravated assault and one count each of attempted murder, criminal conspiracy, possession of an instrument of crime, carrying a firearm without a license, and carrying a firearm on a public street in Philadelphia. On August 14, 2008, the trial court sentenced him to an aggregate term of not less than twenty-five nor more than fifty years' imprisonment for attempted

murder and aggravated assault. No further sentence was imposed on the remaining crimes. This Court affirmed the judgment of sentence on October 25, 2011, and the Pennsylvania Supreme Court denied further review on September 13, 2012. (*See Commonwealth v. Dixon*, 37 A.3d 1242 (Pa. Super. 2011) (unpublished memorandum), *appeal denied*, 53 A.3d 49 (Pa. 2012)).

Appellant filed a timely *pro se* PCRA petition on February 8, 2013. Appointed counsel filed an amended petition on February 5, 2015. On May 13, 2016, the PCRA court notified Appellant of its intention to dismiss his petition without a hearing. *See* Pa.R.Crim.P. 907(1). On June 28, 2016, the PCRA court denied the petition. Appellant timely appealed.[1]

Appellant raises four questions for this Court's review:

1. Whether the PCRA court erred in failing to find that the Commonwealth violated *Brady*[2] when it failed to present the defense with the existence of anonymous information obtained by the police which resulted in presentment of a single photo in its identification procedure?

2. Whether the PCRA court erred in failing to find that Appellant's right to confrontation was violated where the detective was permitted to testify at trial that he spoke with a witness who identified the Appellant as the shooter but no witness was presented at trial?

---

[1] The PCRA court did not order Appellant to file a statement of errors complained of on appeal, but it filed an opinion on October 6, 2016. *See* Pa.R.A.P. 1925.

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

3.    Whether the PCRA court erred in not holding that the absence of complete ***Kloiber***[3] charges resulted in an unfair trial, based upon doubtful identifications?

4.    Whether the PCRA court erred in its conclusion that trial counsel did not provide ineffective assistance of counsel when he failed to object to the ***Kloiber*** charges given by the court and where appellate counsel failed to argue the issue on direct appeal?

(Appellant's Brief, at 3).

As a preliminary matter, as properly noted by the Commonwealth, Appellant has waived his first three claims because he failed to raise them on direct appeal.  (***See*** Commonwealth's Brief, at 7-10).[4]  Hence, Appellant is not eligible for PCRA relief on these issues.   ***See*** 42 Pa.C.S.A. §§ 9543(a)(3) ("To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence . . . [t]hat the allegation of error has not been previously litigated or waived."), 9544 ("For purposes of [the PCRA], an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.").

_____

[3] ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954), *cert. denied*, 348 U.S. 875 (1954).

[4] On direct appeal, Appellant challenged the sufficiency of the evidence to support his attempted murder conviction, on the basis of the Commonwealth's alleged failure to establish specific intent.    (***See*** ***Commonwealth v. Dixon***, No. 2602 EDA 2008, unpublished memorandum at *2 (Pa. Super. filed Oct. 25, 2011)).

In his fourth issue, Appellant argues that the court erred in denying his PCRA petition where trial and appellate counsel provided ineffective assistance. (*See* Appellant's Brief, at 23-28).[5] Specifically, Appellant maintains that "the PCRA court erred in its conclusion that trial counsel did not provide ineffective assistance of counsel when he failed to object to the *Kloiber* charges given by the court and where appellate counsel failed to argue the issue on direct appeal[.]" (*Id.* at 23-24) (emphasis omitted). This issue is waived and would lack merit.

We first observe it is well-settled that an "[a]ppellant's failure to properly develop [his] claim and to set forth applicable case law to advance it renders [the] issue [] waived." *Commonwealth v. Williams*, 959 A.2d 1252, 1258 (Pa. Super. 2008) (citations omitted); *see also* Pa.R.A.P. 2119(a)-(b). Here, Appellant's argument on this claim contains only boilerplate law about ineffectiveness of counsel, a recitation of what occurred at trial, and summary conclusions that counsel had no reasonable basis for his decisions and that he was prejudiced by counsel's actions, all without pertinent supporting legal authority. (*See* Appellant's Brief, at 23-28).

_____

[5] This claim properly is brought under the PCRA. *See* 42 Pa.C.S.A. § 9543a)(2)(ii) ("To be eligible for relief under [the PCRA], the petitioner must plead and prove by a preponderance of the evidence . . . [t]hat the conviction or sentence resulted from . . . [i]neffective assistance of counsel . . .").

Therefore, Appellant's fourth issue is waived. *See* Pa.R.A.P. 2101; *see also*

*Williams*, *supra* at 1258. Moreover, it would not merit relief.

Our standard of review for an order denying PCRA relief is well-settled:

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. . . .

*Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014) (citations,

quotation marks, and brackets omitted).

> In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. [*See*] 42 Pa.C.S. § 9543(a)(2)(ii).
>
> "It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 132 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To prevail on an ineffectiveness claim, the petitioner has the burden to prove that "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Commonwealth v. Sneed*, 616 Pa. 1, 18, 45 A.3d 1096, 1106 (2012) (quoting *Commonwealth v. Pierce*, 567 Pa. 186, 203, 786 A.2d 203, 213 (2001)). "A petitioner

establishes prejudice when he demonstrates [']that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[']" ***Commonwealth v. Johnson***, 600 Pa. 329, 345–46, 966 A.2d 523, 532–33 (2009) (quoting ***Strickland***, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674). The failure to satisfy any one of the three prongs will cause the entire claim to fail. [***See***] ***Sneed***, 616 Pa. at 18, 45 A.3d at 1106 (citation omitted).

***Commonwealth v. Faureles***, 147 A.3d 905, 911 (Pa. Super. 2016), *appeal denied*, 2017 WL 721789 (Pa. filed Feb. 23, 2017).

In this case, Appellant claims "trial counsel was ineffective for failing to object to the ***Kloiber*** charge(s) as read, and [] appellate counsel was ineffective for failing to raise the issue on appeal." (Appellant's Brief, at 25). This issue would not merit relief.

"A ***Kloiber*** charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past." ***Commonwealth v. Reid***, 99 A.3d 427, 448 (Pa. 2014) (citations omitted). "However, identification testimony need not be received with caution where it is positive, unshaken, and not weakened by a prior failure to identify." ***Commonwealth v. Jones***, 954 A.2d 1194, 1198 (Pa. Super. 2008), *appeal denied*, 962 A.2d 1196 (Pa. 2008) (citation omitted).

Here, the PCRA court observed:

> With regards to Ms. Merritt and the instructions given regarding her identification testimony, [Appellant's] complaint was that the word "caution" was never used in the instructions

and a formal **Kloiber** instruction was not read. Ms. Merritt's testimony explained that she viewed [Appellant] as the shooter and viewed him step out of the vehicle and fire shots. Ms. Merritt positively identified [Appellant] as the shooter when shown a picture of him and did not name anyone else when shown a photo array prior to the singular photo. Ms. Merritt's identification of [Appellant] never wavered and she never failed to identify him as the shooter. The instructions given provided the jury with additional factors to think about when evaluating the witness' testimony; therefore there was no reason to give a **Kloiber** instruction.

As for the instructions for Mr. Simmons' testimony, [Appellant's] complaint was with the phrasing of the **Kloiber** instruction. A trial court is given discretion in the phrasing of instruction[s]. In-court instructions are to be upheld if they clearly and accurately reflect the law. . . . Here, the trial court addressed the identification testimony of Mr. Simmons by reading a form of the **Kloiber** instruction. The jury was instructed there was a question regarding the accuracy of Mr. Simmons' testimony and they were advised three separate times that it should be received with caution. [Appellant's] concern with the phrasing of the **Kloiber** instruction therefore has no merit[,] as the reading of the instruction in court accurately conveyed the law.

(PCRA Ct. Op., at 8) (record citation omitted).

Our review of the certified record supports the PCRA court's decision. The trial court properly decided that a **Kloiber** instruction was not required for Ms. Merritt, and the charge given as to Mr. Simmons accurately reflected the law. **See Reid**, **supra** at 448; **Jones**, **supra** at 1198. Therefore, because we find no error of law or abuse of discretion in the instructions given, and neither trial nor appellate counsel can be found ineffective for failing to raise a meritless claim, **see Commonwealth v. Fears**, 86 A.3d

795, 811 (Pa. 2014), Appellant's fourth issue would not merit relief, even if not waived.[6] **See Rigg**, **supra** at 1084.

Order affirmed.
Judgment Entered.

_[signature]_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2017

---

[6] Appellant also argues that trial counsel was ineffective for "failing to demand a line-up for Jasmine," "litigate a motion to suppress identification," or "thoroughly investigate Erica White and [her] step-father," and that "[a]ppellate counsel was ineffective for failing to raise these issues on appeal." (Appellant's Brief, at 25). However, these claims will not be considered because they are neither included in Appellant's statement of questions involved, nor are they fairly suggested thereby. **See** Pa.R.A.P. 2116(a).