J-S03042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JONATHAN D. WHITE, JR. | : | |
| | : | |
| Appellant | : | No. 21 WDA 2021 |

Appeal from the Judgment of Sentence Entered June 19, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0011697-2019

BEFORE:  LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED:  March 15, 2022**

Jonathan D. White, Jr. (White) appeals the judgment of sentence entered by the Court of Common Pleas of Allegheny County (trial court). Following a bench trial, White was found guilty of fleeing or eluding a police officer and driving with a suspended license.  He was sentenced to one year of probation as to the fleeing or eluding count and 90 days of probation as to the suspended license count.  On appeal, White contends that his convictions should be vacated because the Commonwealth failed to prove his identity as the operator of the subject vehicle.  He asserts in the alternative that he should be granted a new trial based on the trial court's exclusion of out-of-

---

[*] Retired Senior Judge assigned to the Superior Court.

court statements tending to prove that someone else committed the subject crimes. We affirm.

**I.**

The trial court has summarized the pertinent facts of this case as follows:

> [Jeremy Howell] was employed as a police officer for Tarentum Borough around 1:00 am on August 3, 2019, assisting another officer on a traffic stop on 7th Avenue. While waiting for a tow truck, the officer heard a motorcycle revving, saw it come down the road, pretty fast, and go through a red light. As the motorcycle passed the location, the officer observed the operator, and he got into his police vehicle to follow it. The officer activated his lights and siren and proceeded to follow the motorcycle to where it had stopped at a traffic light, and the operator appeared to be talking with another motorcyclist who was also stopped at the traffic light. When the light turned green, the motorcyclist, at issue, pulled away slowly, as if preparing to pull over, but then accelerated at a considerable speed.
>
> The motorcycle turned onto a residential street, where it exceeded the posted speed limit at 25 mph, and the officer terminated the pursuit.
>
> [Officer Howell] was able obtain the plate number from a camera and determined the registration of the motorcycle and the drivers associated with the vehicle.
>
> One of those individuals, [White], was identified by [Officer Howell] as the driver of the motorcycle.
>
> [Officer Howell] also testified that the defendant's driving record revealed that [White] was under suspension for DIU related offense at the time.
>
> Specifically, [Officer Howell] was asked:
>
> **Q: Were you able to see the operator?**
>
> **A: Yes.**

**Q: Were you able to observe the operator's physical appearance?**

**A: I was.**

Later, in trial, [Officer Howell] was asked by the [prosecutor]:

**Q: Is the person who [was] driving, [described in] the information, can you identify that person . . . in court?**

**A: Yes.**

**Q: Can you please identify that person and indicate an article of clothing they are wearing?**

**A: Gray shirt.**

**[Prosecutor]: Your Honor, may the record reflect the identification?**

**[Trial Court]: It will.**

**[White], wearing a gray shirt, was identified at trial by the officer.**

* * * *

[White's] father, Jonathan White, Sr. was called to testify at trial. He owned the motorcycle and testified that his [other] son, Brock White, used the motorcycle regularly. He was asked by counsel:

Q: Did [White] have access to your vehicle?

A: No, never.

Yet, shortly after that, [White] stated he didn't know how anyone could see the operator with a beard under the helmet "because my boys don't wear a helmet." The implication of that statement was that the defendant also rode the motorcycle. **Officer Howell testified that the operator that night had a beard, as did [White]**.

> Defense counsel sought to introduce a conversation between [White's father] and his son, Brock White, [which was] characterized as "a statement against interest." Counsel argued that it was an exception to hearsay, because the witness, Brock White, wasn't present to testify. Defense counsel stated that the implication would be that Brock White had the bike that night and may have let one of his friends ride it. Under these circumstances, the court disallowed the evidence.
>
> Further, the [trial court] found [White's father's] testimony to be a thinly veiled attempt to shift the blame for the incident in order to protect [White] from criminal liability. The [trial court] did not find this evidence to be credible.

Trial Court Opinion, 10/1/2021, at 3-5 (citations omitted).

The trial court excluded the out-of-court conversation between White's father and brother. The trial court found White's father to not be a credible witness. Conversely, the trial court credited the identification evidence which the Commonwealth introduced through the testimony of Officer Howell.

The trial court found White guilty of fleeing or attempting to elude a police officer (75 Pa.C.S. § 3733(a)), and driving with a suspended license (75 Pa.C.S. § 1543(b)(1)(i)). White had been charged with four other counts related to the underlying incident, but the trial court acquitted him of those offenses and they are not at issue here.[1] As to the fleeing or eluding count, White was sentenced to one year of probation, and on the count of driving

---

[1] In the information, White was also charged with reckless driving (Pa.C.S. § 3714(a)); careless driving (Pa.C.S. § 3714(a)); failing to obey a stop sign (Pa.C.S. § 3323(b)), and driving at unsafe speeds (Pa.C.S. § 3361).

- 4 -

with a suspended license, he received a probationary term of 90 days, concurrent with the prior count.

White filed a post-sentence motion challenging the sufficiency and weight of the evidence supporting the judgment of sentence. For reasons that are not apparent in the record, the trial court intended to hold a hearing on White's post-sentence motion but never did so, and the motion was deemed denied by operation of law 120 days later. White then timely appealed, and in his appellate brief, he raises the following issues for our consideration:

> I. [Did] the Commonwealth fail[] to present sufficient eyewitness testimony to identify [White] as the driver of the motorcycle to support his convictions for fleeing or attempting to elude [an] officer or driving while license suspended?
>
> II. [Did] the trial court abuse[] its discretion in refusing to grant a new trial where the eyewitness identification was so vague and inconclusive compared to the testimony of [White's] father that [White] had a brother who had access to the motorcycle such that the verdict was against the weight of the evidence?
>
> III. [Did] the trial court abuse[] its discretion to prohibit [White's father] from testifying to a hearsay statement by [White's brother] concerning his use of the motorcycle in question under the statement against interest exception?

Appellant's Brief, at 5 (suggested answers omitted).

## II.

### A.

White's first claim is that his convictions must be overturned because the Commonwealth presented insufficient evidence to establish beyond a reasonable doubt his identity as the operator of the motorcycle. Before

addressing the evidence presented at trial, we begin by reciting the applicable standard of review concerning the sufficiency of evidence and the burden of proof where a defendant's identity as a perpetrator is in dispute:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 954 A.2d 1194, 1196–97 (Pa. Super. 2008) (quoting *Commonwealth v. Vetrini*, 734 A.2d 404, 406–07 (Pa. Super. 1999)) (internal citations omitted).

"[E]vidence of identification need not be positive and certain to sustain a conviction." *Jones*, 954 A.2d at 1197 (citing *Commonwealth v. Woodbury*, 477 A.2d 890, 893 (Pa. Super. 1984)). "[A]ny uncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence, not its sufficiency." *Commonwealth v. Cain*, 906 A.2d 1242, 1245 (Pa. Super. 2006) (deeming identification evidence sufficient, even where

witnesses had previously identified the appellant in a photo array and at a preliminary hearing, but then expressed uncertainty in their identification at trial); *see also Commonwealth v. Kinney*, 157 A.3d 968, 971-72 (Pa. Super. 2017) ("Appellant argues that the victims provided 'unconvincing' and 'vague' identifications and 'inconsistencies regarding the Commonwealth's physical evidence.' Such claims are directed entirely to the credibility of the victim's testimony, and, as such, challenge the weight, not the sufficiency, of the evidence.") (citations omitted).

However, a conviction cannot be sustained where the sole evidence of guilt is only a general description of the perpetrator, as this would force the finder-of-fact to render a verdict based on "conjecture" or a mere "guess." *See generally Commonwealth v. Crews*, 260 A.2d 771, 772 (Pa. 1970); *Commonwealth v. Wiley*, 432 A.2d 220, 224 (Pa. Super. 1981) (same). Where a witness has identified a defendant inconsistently, with uncertainty, or under unclear circumstances, the identification may be insufficient to sustain a conviction as a matter of law. *See Wiley*, 432 A.2d at 227-28.

In the present case, White was positively identified by Officer Howell as the person riding a motorcycle owned by White's father. The operator of the motorcycle was observed by the officer as a "Black male with a [short] beard and clear safety glasses," with a height of over 5'9". Trial Transcript, 6/19/2020, at p. 10. Officer Howell testified that he was briefly able to see the face of the person riding the motorcycle from about 20 feet away, and at

trial, the officer again identified White as the person he had encountered on the night in question. *See id.* pp. 21-29, 30-31.

Officer Howell fully recounted the circumstances in which he identified White. The officer admitted that, although he was able to see the face of the person on the motorcycle, he did not recall whether the person was wearing a helmet. He also testified that the person's face was partially obscured by transparent safety glasses. *See id.* at pp. 10, 22. However, the officer stated that he was able to match White's appearance with that of a photo the officer retrieved from the police data base after running the motorcycle's plate numbers in the system, circumstantially linking White to the offense. *See id.* at pp. 14-17. The incident was recorded on the officer's dash cam, but the footage was never reviewed or retrieved. *See id.* at p. 26.

The trial court, sitting as the finder-of-fact, was able to evaluate the credibility of Officer Howell's identification because the officer testified that he was sure he saw White on the motorcycle, and all of the surrounding circumstances of the identification could be taken into account. The trial court did not have to guess whether the identification was accurate, and the verdict could be entered based on a determination that Officer Howell had testified credibly.

Thus, we must defer to the trial court's credibility determination and hold that the Commonwealth's evidence of guilt was legally sufficient. *See e.g.*, *Cain*, 906 A.2d at 1245 (witnesses' pre-trial identifications were legally

sufficient for conviction despite their uncertainty as to perpetrator's identity at trial); **Jones**, 954 A.2d at 1197-98 (evidence sufficient where legally blind witness recognized defendant by sound of his voice and circumstantial evidence further corroborated the testimony); **Commonwealth v. Edwards**, 229 A.3d 298, 307-08 (Pa. Super. 2020) (identification was sufficient despite witness not recognizing defendant at preliminary hearing because she "confidently identified [him] shortly after the incident and again at trial," and any uncertainty on the witness's part goes to weight, not sufficiency of the evidence).

**B.**

White's second claim is that the verdict is against the weight of the evidence. He contends that Officer Howell's identification was highly tenuous, and that White's brother had a similar appearance, making it easy for their identifies to be confused.[2] While White does not challenge the trial court's credibility determinations in this claim, he argues that he should receive a new

---

[2] White has also argued that the trial court erred in declining to rule on the merits of the weight of evidence claim based on the erroneous belief that it could not reconsider a verdict entered after a bench trial in which the trial court sat as the finder-of-fact. However, after White made his weight of evidence claim seeking a new trial, the trial court clearly contemplated the possibility of granting relief at a hearing set at a later date. **See** Motion Hearing Transcript, 8/12/2020, at pp. 2-5. It is not apparent from the record why no such hearing was set, but notably, the trial court considered the merits of White's weight of the evidence claim in its written opinion. **See** Trial Court Opinion, 4-5.

trial so that he may present evidence that his brother or some other party committed the crimes he was convicted of.

"A challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." **Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006); **see also Commonwealth v. Edwards**, 229 A.3d 298, 306, *appeal granted in part,* 237 A.3d 978 (Pa. 2020), and *aff'd,* 256 A.3d 1130 (Pa. 2021) (same).

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." **Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa. Super. 2015) (quotations omitted). "Resolving contradictory testimony and questions of credibility are matters for the finder of fact." **Commonwealth v. Delmonico**, 251 A.3d 829, 837 (Pa. Super. 2021). An appellate court may not substitute its own judgment for that of the trier of fact. **See id.** (citing **Talbert**, 129 A.3d at 545).

"[A]ppellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion, and an appellate court does not review the underlying question of whether the verdict is against the weight of the evidence." **Id.** Due to the trial court's "opportunity to hear and see the evidence presented,"

the trial court's findings concerning the weight of the evidence are afforded "the gravest consideration." **Id.** (citing **Talbert**, 129 A.3d at 546). "In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Talbert**, 129 A.3d at 545 (internal quotation marks and citations omitted).

In this, case, the trial court did not abuse its discretion in denying White's weight of the evidence claim. Officer Howell testified that he saw White's face as he was speeding on a motorcycle. The officer described the circumstances in which he observed White and made a positive identification. The trial court credited the testimony of Officer Howell, and found that White and White's father had not testified credibly. As discussed above, we must defer to the trial court's credibility determinations. Thus, we cannot find that the evidence of guilt was so tenuous, vague and uncertain that the verdict shocks the conscience of the court, and the trial court's denial of White's post-sentence weight of the evidence claim is affirmed.[3]

**C.**

---

[3] Moreover, the record does not support White's argument that he could have been confused with his brother because no evidence was presented as to Brock White's physical appearance.

White's third claim is that the trial court abused its discretion in excluding from the evidence out-of-court statements by White's brother concerning who was riding the motorcycle early in the morning on August 3, 2019.[4]  If permitted, White's father would have testified that his other son, Brock White, had admitted to him that he or one his friends had used the motorcycle on that date.  The trial court found that this testimony was inadmissible hearsay, rejecting White's argument that the conversation was admissible as a statement against interest.

Hearsay is "a statement . . . the declarant does not make while testifying at the current trial or hearing . . . [that is offered] in evidence to prove the truth of the matter asserted."  Pa.R.E. 801(c)(1)-(2).  Statements that meet this definition are not admissible unless an established hearsay exception applies.  **See id.** 802.  One such exception to the prohibition against hearsay is where the declarant who made an out-of-court statement is unavailable.

Under Pa.R.E. 804(b)(3)(B), the prohibition against hearsay does not apply with respect to an unavailable declarant if (1) the statement subjected the declarant to criminal liability, and (2) at the time the statement was made, there were corroborating circumstances which "clearly indicate its

---

[4] A trial court's ruling on the admission of evidence is subject to an abuse of discretion standard.  **See Commonwealth v. Golphin**, 161 A.3d 1009, 1022 (Pa. Super. 2017).  An abuse of discretion occurs where the law has been misapplied, the judgment is manifestly unreasonable, or "the record shows that the action is a result of partiality, prejudice, bias or ill will."  **Id.** (quoting **Commonwealth v. King**, 959 A.2d 405, 411 (Pa. Super. 2008)).

trustworthiness[.]" For the purposes of this hearsay exception, a declarant is considered unavailable if the declarant:

(1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;

(2) refuses to testify about the subject matter despite a court order to do so;

(3) testifies to not remembering the subject matter, except as provided in Rule 803.1(4);

(4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

**(5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure**:

    (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or

    **(B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)**(2), **(3)**, or (4).

Pa.R.E. 804(a) (emphasis added).

In this case, the unavailable witness hearsay exception does not apply because White's brother was not shown to be an "unavailable" declarant. During the testimony of White's father, he was asked about a conversation with his second son, Brock White. The prosecution objected on hearsay grounds, and defense counsel proffered that the statement would satisfy a hearsay exception because White's father would be relaying an incriminating admission on the part of Brock White that he was either the operator of the

motorcycle on August 3, 2019, or he loaned the motorcycle to a friend without his father's permission. *See* Trial Transcript, 6/19/2020, at pp. 42-43. Defense counsel stated further that Brock White was "not someone who willingly would testify[.]" *Id.* at p. 46. The trial court sustained the prosecutor's objection because the witness had not appeared at the trial.

Aside from the fact that the trial court found that White's father was not a credible witness, none of the definitions of an "unavailable" declarant outlined in Pa.R.E. 804(a) have been met here. There was no showing that Brock Wilson's statements were privileged, that he was defying a court order to testify, or that he was unable to testify due to infirmity, illness or lack of memory. *See id.* Pa.R.E. 804(a)(1)-(4). Further, White, as the proponent of the statements, did not show that he was unable, by process or other reasonable means, to procure the attendance of his brother at trial. *See id.* Pa.R.E. 804(a)(5)(B). Defense counsel's blanket statement that Brock White would not willingly testify does not satisfy the standard of unavailability under the evidentiary rules. Accordingly, the trial court did not err in excluding the purported statement of Brock White on hearsay grounds.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/15/2022</u>